Moulton vs. Posten, imp.

MOULTON VS. POSTEN, imp.

*March 31 — April 19, 1881.*

52   169
d100 185
52        169
53 LRA 323n
53 LRA 324n

PROMISSORY NOTE: EXTENSION: SURETY.   *(1) Definite time of extension. (2) Usurious consideration: who may allege it. (3) Fraud of maker against surety.*

1. An agreement, upon sufficient consideration, to extend the time of payment of a note "until after threshing," *held* to be for a time sufficiently definite to give it validity, and work a discharge of the non-assenting surety.
2. The *consideration* for the alleged extension was a second note then given by the principal promisor in the first note; such second note was usurious; and it does not appear that it has ever been paid. *Held,* that there was a valid extension.
[3. *It seems* that where A. makes his note payable to X. or bearer; and procures B. to sign it for his accommodation, and for the purpose of enabling him to negotiate said note to X., and afterwards A. negotiates it in fact to Y. for the payment of a different debt, this is a fraud upon B., which, if known to Y. when he took the note, will prevent a recovery thereon against B.]

APPEAL from the Circuit Court for *Fond du Lac* County.

Action upon the joint promissory note of the defendant and one B. C. Smith. The cause was tried without a jury. The following findings of fact by the court will explain the nature of the action and the grounds of defense thereto:

"*First.* On the 29th of March, 1870, in the town of Mackford, Green Lake county, the defendant B. C. Smith, being indebted to one Benjamin Foote in the sum of about $60, and to one Dr. Eggleston in the sum of $40, made his promissory note in the following words and figures, to wit:

"'$100.                                    MARCH 29, 1870.

"'Eight months after date we promise to pay to Benjamin Foote, or bearer, $100, value received, with interest at ten per cent. till paid.                                    B. C. SMITH.'

"And thereafter, about the third or fourth day of April following, he informed the defendant *Posten* of the foregoing

facts, and that he intended to deliver the note to said Foote to pay said indebtedness to him, and to obtain the balance in money to pay said Eggleston, and procured him to sign the said note as a joint maker thereof for the accommodation of him, the said Smith.

"*Second.* Thereafter, before the note was due, said Smith, having failed to negotiate said note to said Foote, and being indebted to one H. C. Moulton, of Berlin, Wisconsin, in a sum over $100, negotiated said note to him, who was agent of the plaintiff, but was unknown to said Smith to be so, in payment of $100 of such indebtedness to H. C. Moulton, informing him, at the same time, that the defendant *Posten* signed said note as surety, and had no interest therein, and that it was so signed to be delivered to said Foote for the purpose aforesaid.

"*Third.* Said note was not paid at maturity, and the defendant Smith, being often called upon by said H. C. Moulton for payment of the same, as often put off, and requested him not to demand payment of the defendant *Posten*, and said Moulton so promised; and, in consideration of such delay and such promise, said Smith agreed to pay the expenses of said Moulton traveling to Smith's place of residence from Berlin, aforesaid, to collect said note, and did, on or about July 30, 1873, give said H. C. Moulton his note for $25, a portion of which was for said expenses and delay, as aforesaid, and the defendant *Posten* had no knowledge thereof, and no demand for payment of said one hundred-dollar note was ever made upon the defendant *Posten* until shortly before the commencement of this action, in October, 1876, and said note was not paid by the defendant *Posten*, nor any part thereof.

"*Fourth.* This action was commenced against the defendant *Posten* as a sole defendant, about the 30th day of October, 1876, in justice's court, and came to this court by appeal.

"*Fifth.* On the application of the defendant *Posten*, on the 5th day of March, 1878, an order was made by the court mak-

Moulton vs. Posten, imp.

ing said B. C. Smith a party defendant in this action, and a summons and a copy of the complaint were served upon him.

"*Sixth.* Within the time limited by the order, said Smith interposed a demurrer to the complaint, and pleaded the statute of limitations as a defense; and said demurrer was sustained by the court by an order dated July 22, 1878, on the ground that the cause of action had ceased as against said defendant Smith before the commencement of this action against him, as aforesaid.

"*Seventh.* The defendant *Posten* signed said note as surety for the accommodation of the defendant Smith, and had no interest therein, to the knowledge of said H. C. Moulton, agent of the plaintiff as aforesaid, at the time he accepted the same of said Smith.

"*Eighth.* At the time of the maturity of said note, said Smith had some property out of which said note, or a portion thereof, might have been collected; but before the commencement of this action he became utterly insolvent."

The conclusions of law are as follows:

"*First.* The defendant *Posten* is discharged from any liability on said note in the complaint mentioned, by the acts and *laches* of the plaintiff in giving time to the maker, Smith, and in losing his cause of action by a failure to commence against him within the statute of limitations.

"*Second.* The defendants are entitled to judgment dismissing the action, and for costs."

Judgment for the defendant was entered accordingly, from which the plaintiff appealed.

The cause was submitted on the brief of *Elihu Colman* for the appellant, and that of *Geo. W. Carter* for the respondent.

Lyon, J. The learned judge of the circuit court ordered judgment dismissing the action, on the grounds, (1) That the plaintiff, by his agent, extended the time of payment of the note at the request of Smith, the maker, for whose debt it was

given, without the consent of the defendant *Posten*, and with knowledge that the latter signed it for the accommodation of Smith; and (2) because of plaintiff's *laches* in not bringing suit upon the note in time to prevent Smith from availing himself of the defense that the statute of limitations had run in his favor against the note. It is not deemed necessary to determine whether the latter ground will support the judgment.

On the question as to whether the plaintiff, by his agent, agreed with Smith to extend the time of payment, the testimony is somewhat conflicting. Smith testified that about June 1, 1872, he paid H. C. Moulton $10. for extending the note, and also $10 for another extension in July, 1873. Also that the last-named sum was included in a note for a larger sum which he gave to Moulton. He further testified that the note was extended a definite time; that Moulton agreed to give a certain time, and not to call upon the defendant for payment; and, while he could not state the exact time that payment was so extended, he thinks it was until after threshing.

. H. C. Moulton denied that he ever received a dollar or a cent as consideration for the extension of the note, or that he ever agreed to wait any definite time.

The court evidently gave the most weight to the testimony of Smith, for in several matters concerning which this testimony is in conflict with that of Moulton, the findings are in accord with the testimony of Smith. No other witness testified on the trial. Taking Smith's statement as the true one, the court might well have found an extension of credit on the note to a future certain time, although the precise day does not appear. If the extension was in terms until after threshing time, the consequences of it would be the same as though it was to a future day named. On an executory contract, which, by its terms, is not to be performed until after the next threshing time, we apprehend the promisor could not be put in default for non-performance until, in the usual and ordinary acceptance of the term, that time had passed. Among farmers

certain periods of the year are designated by the usual employments of those seasons, as sheep-shearing time, planting, haying, harvest, seeding and threshing time, and the like. The use of any one of these terms conveys a reasonably definite idea of the period of the year intended. The court may properly take judicial notice of the fact that "threshing time" in this state is in the autumn of the year.

Moulton does not deny, in terms, that he agreed to wait until after threshing, but only denies that he agreed to wait any *definite* time. He may have meant by that, and probably did mean, that he gave no extension to a specified day. Certainly he does not fully (if at all) contradict the testimony of Smith that the extension was to be until after threshing. We think it a fair deduction from the testimony of both witnesses, that Moulton agreed, in terms, in July, 1873, to give an extension until after threshing,— that is, until the next autumn; and we must consider the case as though the fact had been found more specifically. The precise question is, whether an action could have been maintained on the note in suit before the time of the alleged extension had elapsed. If it could, there was no valid extension, and the surety is not discharged. If the right of action was thereby suspended, he is discharged. Had Smith paid money for the extension, it would have bound the plaintiff, and the defendant would have been released from liability on the note. This is expressly ruled in the late case of *Hamilton v. Prouty*, 50 Wis., 592, where the whole subject is very fully discussed and the authorities collected, in the opinion by Mr. Justice CASSODAY.

It seems to us that the doctrine of that case is applicable here, notwithstanding Smith gave his note for the premium instead of paying it in money as was there done. The money paid in that case and the note given in this case were alike in excess of the highest legal rate of interest. The money there paid could have been recovered back by the party who paid it, if sued for in time. So, here, if Smith has paid his note

given for the consideration of the extension, or hereafter pays it, he may maintain his action to recover back the money paid, if brought within the prescribed time. And in either case the statutory penalty could also be recovered.

It was held in *Hamilton v. Prouty*, that although the transaction was usurious, it was binding upon the plaintiff, who received the money for the extension, and he would not be allowed to assert the illegality of the transaction and maintain an action on the note before the agreed period of extension expired. No good reason is perceived why the same rule is not applicable to this case. The agreement for extension was executed by the giving of a note for the consideration of it, as effectually as it would have been by paying the same in money. It is only a different mode of execution. Had the plaintiff brought an action on the note in suit before the time of extension expired, it seems to us that the action would have abated on proof that he had agreed to extend and received Smith's note for the consideration of the extension. He could not have been heard to allege that the note taken for the extension was usurious, and that there was no consideration for his agreement to extend. The right to make that allegation was in Smith alone. We conclude that the case is within the rule of *Hamilton v. Prouty*, and hence that the defendant is discharged from liability on the note.

The circuit court found that the note in suit was signed by the defendant for a special purpose — that is, to pay Smith's indebtedness to Foote and Eggleston,— and that the plaintiff's agent, H. C. Moulton, received it with knowledge of the purpose for which it was made, on a debt which Smith owed him. This finding is supported by the testimony. There is no proof tending to show that the defendant consented to such disposition of the note, or that he knew of it until long afterwards. It was held in *Bowman v. Van Kuren*, 29 Wis., 209, that under similar circumstances there could be no recovery against the indorser of a note. The same rule applies to one who

signs the note as surety for the accommodation of the maker. The rule is stated in Edwards on Bills and Notes, 316, as follows: " Where such indorsement is made for a special purpose, such as to enable the maker to obtain a discount at a particular bank, or to raise money in a given way to .pay a certain draft, the maker has no right to use the note in any other way; and if he does so, it is a fraudulent perversion of the paper from its original object and design. And if the person receiving it from him knew the circumstances and terms of the indorsement, or is to be considered chargeable with notice, he cannot recover on it against the indorser."

It is probable that under the above rule the defendant was discharged from liability on the note. But inasmuch as the circuit court rested its judgment upon other grounds, one of which we think sufficient to support it, we prefer to affirm the judgment on that ground.

*By the Court.*— Judgment affirmed.