MAGGIE GRISIM v. LIVE STOCK STATE BANK OF SOUTH ST. PAUL AND OTHERS.[1]

April 16, 1926.

No. 25,100.

**When an accommodation maker of note to be used for special purpose is not liable on it.**

1. One who without consideration executes paper for the accommodation of another may impose as a condition that it shall be used only for a designated special purpose, and if it be used for a different purpose he is not liable thereon unless it passes to a holder in due course.

**When indorsee of accommodation paper cannot enforce it against maker.**

2. Paper executed to a bank without consideration for the 'sole

[1]Reported in 208 N. W. 805.

purpose of being held until the bank makes an assessment upon its capital stock to replace worthless paper, and which is transferred to another bank which took it after the assessment had been made and with knowledge of the purpose for which it was given, cannot be enforced by the second bank.

**Communication by client to his attorney inadmissible in evidence.**

3. Testimony as to a statement made by a witness to an attorney was properly excluded as a communication between client and attorney.

**When nature and effect of transaction not changed by maker of note taking security.**

4. Where paper is executed without consideration for a special purpose, taking security does not change the nature or effect of the transaction.

Bills and Notes, 8 C. J. p. 255 n. 86; p. 282 n. 71; p. 738 n. 82.
Witnesses, 40 Cyc. p. 2361 n. 81.

Drovers State Bank of South St. Paul appealed from a judgment in favor of plaintiff after trial before Johnson, J., in an action in the district court for Dakota county to cancel a note and mortgage. Affirmed.

*Converse & Converse,* for appellant.
*O'Malley & O'Malley,* for respondent.

TAYLOR, C.

Plaintiff brought this action to have a note and mortgage, dated January 9, 1922, payable five years after date for the sum of $4,500, executed by her to defendant Live Stock State Bank and transferred by that bank to defendant Drovers State Bank, canceled and annulled. The trial resulted in a judgment annulling them. All three defendants took part in the trial, but only the Drovers State Bank appealed from the judgment.

The banks were located in South St. Paul. W. A. Samels was president and Edward J. Vogel cashier of the Live Stock Bank. Both were friends of plaintiff and her daughter Margaret, and Vogel boarded with them. In the latter part of 1921 the state banking department required the Live Stock Bank to charge off a quantity

of worthless paper carried among its assets and replace it with cash or good paper. Samels and Vogel called plaintiff and her daughter to the bank and persuaded plaintiff to execute the note and mortgage as a favor and accommodation to them to be put in the bank temporarily in place of a part of the worthless paper charged off. The court found that she received no consideration whatever for executing them and this fact is undisputed. The court also found in substance that Samels and Vogel represented and promised that she would never be called upon to make any payment on them; that they would be released, canceled and surrendered at any time that she so requested; that in any event they would be held only until an assessment about to be made upon the stockholders was made, and that this arrangement was both lawful and satisfactory to the banking department; and further found that plaintiff, believing these representations to be true and in reliance upon them, executed the note and mortgage for the sole purpose of being held until the assessment was made.

Plaintiff desired something to show that she was not to be liable on the note and mortgage, and on the same date on which they were executed Vogel as cashier with the concurrence of Samels wrote her a letter in which, after referring to the accommodation to the bank, he said:

"I wish to say that Mr. Samels and myself want to take every precaution to protect you as it is not our intention that you pay this mortgage or pay any interest thereon. It is our intention that this note and mortgage be returned to you satisfied at the time that an assessment will be levied against the stock of the Live Stock State Bank to take care of such items as this."

The assessment was made in July, 1922, payable within 90 days thereafter. The court found that plaintiff repeatedly demanded the return and satisfaction of the note and mortgage both before and after the assessment was made, but that the bank refused to return them. The evidence shows that she began worrying about this paper within two or three weeks after it was executed and thereafter made frequent requests to have it returned to her, and that

Samels continually put her off with statements to the effect that he was unable to return it then but would arrange to do so shortly.

The financial difficulties of the Live Stock Bank reached such a point that in February, 1923, it entered into a contract with the Drovers State Bank, set forth in full in the findings, by which it transferred and conveyed all its property and assets to the Drovers Bank, and the Drovers Bank assumed and agreed to pay all the obligations of the Live Stock Bank "on account of deposits" as shown by the books of the latter bank.

This contract contained many provisions not necessary to mention, and was accompanied by a surety bond in the penal sum of $100,000 to secure the Drovers Bank against loss if the proceeds of the assets turned over to it were not sufficient to pay the obligations assumed. The surety company paid the full amount of the bond, but this did not make up the full amount of the shortage.

The note and mortgage in question were respectively indorsed and assigned to the Drovers Bank under and pursuant to the above agreement. The court found that the Drovers Bank took this paper "with full notice and knowledge of the circumstances attending its making" and "of the special purpose for which it was given."

This is the only material fact in the case concerning which the evidence is conflicting. The Drovers Bank was represented by its president, Otto Schumacher, in the negotiations between the two banks. Before closing the contract he checked over the paper held by the Live Stock Bank with Samels and Vogel. Samels died in June, 1923, but Vogel testified at the trial that, when plaintiff's paper was reached in the checking, he and Samels informed Schumacher of the situation in respect to that paper and that it was to be returned to plaintiff, and that Schumacher then placed it in the pile of doubtful and worthless paper. Schumacher denies receiving any such information or placing the paper in the doubtful list. The evidence made the question a question of fact to be determined by the trier of facts, and the finding must stand.

Plaintiff executed the note and mortgage to the Live Stock Bank wholly without consideration and for the sole purpose of permitting

the bank to hold them among its assets until the assessment was made upon the stock. She was simply loaning her credit to the bank for a particular purpose and for a specified time. The transaction being without consideration and solely for the accommodation of the bank, it was competent for plaintiff thus to limit her liability. The accommodating party may limit the use to be made of the accommodation paper to a specific purpose and for a specific time, and is not liable thereon if it is used for a different purpose unless it passes to a holder in due course. The Drovers Bank having taken the note and mortgage in question from the Live Stock Bank with knowledge of the purpose for which they were given and of the limitations placed upon the use to be made of them, is not in position to enforce them against plaintiff. Farley Nat. Bank v. Henderson, 118 Ala. 441, 24 South. 428; Gilman Sons & Co. v. N. O. & S. R. Co. 72 Ala. 566; Lay v. Wallace, 106 Ark. 458, 153 S. W. 601; Boutelle v. Wheaton, 13 Pick. (Mass.) 499; Chicopee Bank v. Chapin, 8 Metc. (Mass.) 40; Stoddard v. Kimball, 6 Cush. (Mass.) 469; Benjamin v. Rogers, 126 N. Y. 60, 26 N. E. 970; U. S. N. Bank v. Ewing, 131 N. Y. 506, 30 N. E. 501, 27 Am. St. 615; Clinton Bank v. Ayres & Neil, 16 Ohio, 283; Knox County Bank v. Lloyd's Admrs. 18 Oh. St. 353; Lenheim v. Wilmarding, 55 Pa. St. 73; Stewart v. Moore, 12 Phil. (Pa.) 225; Hickerson v. Raiguel & Co. 2 Heisk. (Tenn.) 329; Smith v. Traders Nat. Bank, 74 Tex. 457, 12 S. W. 113; Bowman v. Van Kuren, 29 Wis. 209, 9 Am. Rep. 554; Moulton v. Posten, 52 Wis. 169, 8 N. W. 621; Burr v. Beckler, 264 Ill. 230, 106 N. E. 206, L. R. A. 1916A, 1049, Ann. Cas. 1915D, 1132; Second Nat. Bank v. Howe, 40 Minn. 390, 42 N. W. 200, 12 Am. St. 744; Nat. Citizens Bank v. Bowen, 109 Minn. 473, 124 N. W. 241; Farmers State Bank v. Skellet, 149 Minn. 266, 183 N. W. 831.

The provisions of the Negotiable Instruments Law applicable to an accommodation maker were considered in Vernon Center State Bank v. Mangelsen, 166 Minn. 472, 208 N. W. 186, and it was pointed out that under that act an accommodation maker does not occupy the position of a surety but is primarily liable on the instrument, and therefore is not released by the granting of an extension of

time without his consent, nor by any other act which would release only those secondarily liable and not those primarily liable. Although the particular question presented in the instant case was not presented nor considered in that case, it was plainly indicated that section 29 of the act does not preclude an accommodation maker from asserting against a holder for value those defenses open to a party primarily liable on the instrument.

Section 58 of the act (G. S. 1923, § 7101) provides:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable."

This simply puts the rule previously recognized and applied everywhere into statutory form. Want of consideration being a valid defense against non-negotiable paper, this provision if it stood alone might give rise to the claim that want of consideration is a defense to accommodation paper against anyone who took it with notice of its accommodation character. To permit a party who places his name on such paper for the purpose of lending his credit to another to interpose want of consideration as a defense against a holder who took it for value, would defeat the very purpose for which accommodation paper is usually given. To limit the above rule as applied to accommodation paper so that such paper will accomplish the purpose obviously intended, section 29 of the act (G. S. 1923, § 7072), provides that an accommodation party "is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

This provision takes away the defense as against a holder for value that he took the instrument with knowledge that it was accommodation paper and therefore without consideration. It does not take away other defenses. If it did it would place the accommodating party in a more onerous position than the accommodated party, and such a result could not have been intended. It does not abrogate or change the rule that accommodation paper, executed only for a specific purpose and thereafter diverted to a different

purpose, cannot be enforced against the accommodation maker by a holder who took it knowing the specific purpose for which it was executed. Crawford, Neg. Inst. Law, 71; Ogden, Neg. Inst. 146; Brannan, Neg. Inst. Law, 126. Brannan urges that to guard against misinterpreting the purpose and meaning of section 29, the provision quoted therefrom should be amended to read that an accommodation party "is liable on the instrument to *one who is in other respects a holder in due course,* notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

See page 122 et seq. He answers the assertion that such an amendment is not necessary as the provision as it stands should be so construed by saying that it is the part of wisdom to remove all doubt.

Parol evidence was admissible to prove that the note and mortgage were given without consideration as accommodation paper and the special purpose for which they were given, and we find nothing to criticize in the rulings of the court admitting such evidence. See cases cited; also Green v. McCord, 204 Ala. 356, 85 South. 750; 8 C. J. 255, § 402.

Appellant called as a witness R. J. Mordaunt, one of the attorneys for the surety company which had executed the bond given to the Drovers Bank, who stated that Vogel had explained the Grisim matter to him. Appellant sought to prove the statements made by Vogel to this witness in that explanation and complains of the ruling excluding this testimony. The only purpose for which it would have been admissible was to impeach Vogel. It was excluded on the ground that it was a communication between attorney and client. The following questions and answers show the basis for this ruling.

Q. "Did you advise Mr. Vogel whether or not he was guilty of an offense under the law of this state?"

A. "I did not. I gave an opinion. He came to ask me what I thought of the situation. He told me at that time he had just come—"

Q. "Wait—He came to get your opinion as to what the legal effect of what was done there was?"

A. "He did."

Q. "You gave it to him?"

A. "I did."

We think this testimony warranted the ruling.

The complaint, after setting forth the agreement under which plaintiff executed the note and mortgage, alleged that as security for the performance of its agreement by the bank Samels executed to plaintiff his promissory note for the sum of $4,500 and deposited and pledged this note together with 50 shares of the capital stock of another corporation with plaintiff "as collateral security for the carrying out of the said promise and agreement by said Live Stock State Bank."

At the beginning of the trial plaintiff's attorney moved to strike this allegation from the complaint on the ground that it was not true and had been inserted through his own inadvertence. The court denied this motion, but afterwards admitted evidence which showed the fact to be that, when plaintiff some three weeks after the execution of the note and mortgage went to the bank and asked to have them returned, Samels offered to give her his note and this stock as security, and that she refused to accept it insisting upon the return of her own paper. Vogel however, without plaintiff's knowledge, had Samels execute the note and held it and the stock in the bank until this action was begun when he delivered it to plaintiff's attorney. There is no dispute as to the facts, but appellant insists that plaintiff is bound by the allegation in her complaint, and that this allegation shows an exchange of notes, and that where notes are exchanged each is a consideration for the other. We may grant that plaintiff is bound by her pleading, but the pleading does not show an exchange of notes. It shows merely that she received security that her note and mortgage would be canceled and surrendered when they had served the special purpose for which they were given. She had the right to exact such security and taking it did not change the character or effect of the transaction. See cases above cited.

Appellant also complains of the finding that certain of the representations made to plaintiff were false on the ground that fraud was not alleged in the complaint. This finding while justified by the evidence is wholly immaterial as it has no bearing upon the result.

The conclusions reached by the learned trial court are amply sustained by the record and the judgment is affirmed.