FIRST NATIONAL BANK OF ABERDEEN, Appellant,
v. THOMPSON, Respondent.

(227 N. W. 81.)

(File No. 6543.   Opinion filed October 15, 1929.)

*Van Slyke & Agor*, of Aberdeen, for Appellant.
*Bruell & Henderson*, of Redfield, for Respondent.

FULLER, C. The action here is upon a promissory note. The defense is fraud and that the defendant, maker of the note, executed the same without consideration and for the purpose of accommodation. Verdict was for the defendant, and judgment was accordingly entered on December 16, 1927. On December 22, 1927, the plaintiff moved the court for judgment non obstante veredicto. An order was then made requiring defendant to show cause why that motion should not be granted. On January 17, 1927, the return day, the defendant appeared and objected to the jurisdiction of the court for the reason that judgment had already been entered and because no transcript of the testimony had been prepared and served. The trial court continued the hearing until after March 3, 1927, when a transcript was served by the plaintiff upon defendant, and, on May 4, 1927, order was entered denying the motion. The motion for judgment notwithstanding the verdict included the further motion that the court vacate and set aside the judgment already entered. The appeal is stated to be from the order denying plaintiff's motion to vacate and set aside the judgment, and from the order denying plaintiff's motion for judgment notwithstanding the verdict, and from the judgment. Pertinent to a consideration of preliminary questions of procedure is the fact that the substantive inquiry on this appeal relates to the sufficiency of the evidence to support the verdict.

Respondent first questions whether the record of evidence and of proceedings at the trial was timely settled, and reference is made to the fact that the record was settled after the entry of order denying appellant's motion for judgment notwithstanding the verdict. But the question is not material. We are at once confronted with the inquiry whether such a motion may have been granted in any event after the entry of judgment. No direct authority to the point is cited or discoverable by careful research. But we are clearly of the view that the motion came too late. Obviously a second judgment, inconsistent with the first judgment, could not have been entered upon the motion unless the judgment already entered were first vacated and set aside. Though jurisdiction may exist to correct mistakes and to make a judgment conform to verdict, the trial court is without jurisdiction to vacate and

set aside a judgment, on account of the insufficiency of the evidence to support the verdict, except on motion for new trial. The purpose of the motion for judgment notwithstanding the verdict, and of the motion to vacate the judgment in this case, was to obtain a review of the evidence after judgment. The question as to the sufficiency of evidence to support the verdict is a matter decided and concluded by the entry of judgment in conformity with that verdict, except for established procedure which may permit a reconsideration or review of the question. The relief sought by the motions below was obtainable by motion for new trial and not otherwise.

In this case there is also an appeal from the judgment. On such appeal the court may consider errors at law occurring at the trial in the admission or rejection of evidence, the ruling on motion for directed verdict, and, we may say, the ruling on motion for judgment notwithstanding the verdict *when timely made*. Williamson v. Voedishch Jewelry Co., 35 S. D. 390, 392, 152 N. W. 508; Fuller v. James Murphy, etc., Co., 54 S. D. 492, 223 N. W. 713, 714; First Nat. Bank v. Wollman, 55 S. D. —, 225 N. W. 713, opinion filed June 4, 1929. Questions of this character may be considered when a record has been settled. It has not been questioned in this case whether a single appeal can be taken from the judgment and from the orders above mentioned (Nat. Surety Co. v. Cranmer, 27 S. D. 515, 131 N. W. 864; Gordon v. Kelley, 20 S. D. 70, 104 N. W. 605), and, since the question of duplicitous appeal does not involve a matter of jurisdiction of this court, we will deal with the appeal as properly taken from the judgment, and consider the trial court's refusal to direct a verdict on plaintiff's motion.

In October, 1924, the superintendent of banks ordered an assessment to be levied upon the shares of the stockholders in the Northville State Bank. The assessment was not made. In the first week of April, 1925, one Bockler, who was cashier of the bank, requested the superintendent of banks to withhold the closing of the Northville State Bank, and stated that he could bring about its recapitalization by means which included the sale of the bank stock to certain friends and others and the taking from some of these persons of promissory notes which would be sold. In the same month Bockler obtained from respondent Thompson a note payable

to Bockler in the sum of $900. For this note Thompson received no consideration. According to part of the testimony of respondent, Bockler made it clear to him that the object of the note was a personal accommodation to Bockler and not for the assistance of the bank; that Bockler needed money and would use the note at the Northville State Bank; and that the note would remain in the bank until he should pay it off by the sale of certain property which Bockler owned. Bockler represented that the Northville State Bank was in good condition and its stock worth a hundred cents on the dollar. Respondent, Thompson, claims that he would not have signed the note had he known that the bank was not in a sound condition or that Bockler's intention was other wise than as above stated. He testified that in the latter part of April or the first of May, 1925, Bockler again saw him and represented that he (Bockler) believed he would be able to pay off the note sooner than he had previously considered, and, for that reason, wanted a new note with the date changed. Respondent thereupon signed the note, which is in suit, of $900, and the note was thereafter transferred for value to the appellant, First National Bank of Aberdeen. The first-mentioned note was payable to Bockler. The last-mentioned note was payable to the Northville State Bank. In suit thereon verdict and judgment below were for Thompson, and the appellant argues that the decision was against the undisputed evidence. Rev. Code 1919, § 1733, provides that: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

Concerning this provision (Uniform Negotiable Instruments Act, § 29) the Minnesota Supreme Court in Grisim v. Live Stock State Bank, 167 Minn. 93, 208 N. W. 805, 807, has written that: "This provision takes away the defense as against a holder for value that he took the instrument with knowledge that· it was accommodation paper ·and therefore without consideration. It does not take away other defenses. If it did, it would place the accommodating party in a more onerous position than the accommodated party; and such a result could not have been intended. It does not

abrogate or change the rule that accommodation paper, executed only for a specific purpose and thereafter diverted to a different purpose, cannot be enforced against the accommodation maker by a holder who took it knowing the specific purpose for which it was executed."

In other words, when we deal with a negotiable instrument, the ordinary rules applicable to a holder in due course control, except that, with respect to the mere defense that the defendant is an accommodation maker, a holder for value may recover, even though he has knowledge that the maker is an accommodation party. But the allegations of the answer in this case are sufficient to raise the defense of fraud on the part of Bockler in obtaining the note from respondent, and the defense that the transfer or use of the note by the Northville State Bank for its own benefit was a violation of the agreement according to which the note was made and placed in Bockler's hands. The plea here, aside from allegations of fraud, is that the note, being given for accommodation of Bockler, was wrongfully appropriated to another purpose which is essentially the plea that the note was never delivered or applied to the objects of its execution. With respect to these defenses, Rev. Code 1919, § 1756 (Uniform Negotiable Instruments Act, § 52) is applicable as follows: "A holder in due course is a holder who has taken the instrument under the following conditions: 1. That it is complete and regular upon its face. 2. That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact. 3. That he took it in good faith and for value. 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

And reference should also be had to Rev. Code 1919, § 1763 (Uniform Negotiable Instruments Act, § 59) in part as follows: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he acquired the title as a holder in due course."

We agree with appellant that, when the above statute is invoked, the question whether plaintiff is a holder in due course is not, in all cases, a matter for decision by the jury. It is to be admitted that when the evidence is undisputed and there is nothing

to justify an inference of bad faith the party who otherwise appears to be a holder in due course should recover as a matter of law and upon directed verdict. Jerke v. Delmont State Bank, 53 S. D. 446, 223 N. W. 585; Nat. Bank of Commerce v. Botollfson, 55 S. D. —, 225 N. W. 385, 386.

To justify the submission of the case to the jury and its verdict, respondent mainly relies upon the testimony of appellant's officer who, in taking the note from Bockler, the cashier of the Northville State Bank, admitted that he knew this note, and similar items purchased at the same time, were obtained by Bockler from his friends, and that Bockler paid nothing for them. We are unable to translate this proof into any other effect than that the appellant, a holder in due course, knew that respondent was an accommodation party. But that fact is plainly declared by section 1733, supra, to be insufficient to constitute a defense against one who is a holder for value. It is also claimed as a matter of evidence that appellant's officer, being first offered the note first made by respondent, payable to Bockler, refused to take it and required Bockler to obtain a new note from respondent payable to the Northville State Bank. Assuming this claim to be based upon a fair inference rather than surmise we find nothing in that feature of the transaction to expose a lack of good faith on the part of appellant. When later offered the note payable to the Northville State Bank, appellant was not bound to assume that fraud had been practiced in procuring the note, nor that it was being negotiated in breach of trust. The note was a negotiable instrument in the hands of the cashier of the Northville State Bank to which bank it was payable. It was offered for negotiation before maturity, and appellant intended to and did give the payee credit upon appellant's books for the full face value of the note. Appellant calls attention to the fact that the officer of appellant's bank who managed the transaction of purchase of the note was a director of the Northville State Bank and knew of its insolvent condition; and, upon evidence too indefinite and partial to produce a clear inference, it is argued that appellant knew that the object of this and similar notes, handled at the time, was to aid and benefit the Northville State Bank in its financial weakness. But the defect in the paper, according to the alleged defense, was that Bockler had falsely represented to respondent that he desired the note for his personal accommodation

and that he represented the Northville State Bank was in a sound and solvent condition; that it was agreed the note would remain in the Northville State Bank and be used for Bockler's benefit and not for that of the bank. This defense is asserted over the admission in respondent's answer, and in his testimony, that he understood in signing the note that it was "to be put up as collateral." Granting every possible inference to support the existence of these defenses against the payee, Northville State Bank, there is no showing that appellant had knowledge of any defect in that title of the payee which it professed and appeared to possess when it offered the note to appellant for full value and before maturity. To reach any other conclusion on this record, we would be obliged to reopen doors into evidentiary matters which have been closed by the Uniform Negotiable Instruments Act and sealed by decisions of this and other courts. To impose upon the purchaser of negotiable paper a duty to inquire concerning matters of which a transaction in the ordinary course of business creates no suspicion would be to disregard the evident object of the law and to signalize the decisions of this court as discordant with uniform construction.

Appellant's motion for directed verdict should have been granted. The judgment is reversed, and the case remanded, with directions for the entry of judgment consistent herewith.

SHERWOOD, P. J., and POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.