**ANDRESEN v. KAERCHER (two cases).**
Nos. 8684, 8685.

Circuit Court of Appeals, Eighth Circuit.

Feb. 12, 1930.

Charles E. Chrisman, of Ortonville, Minn. (J. J. Purcell, of Ortonville, Minn., on the brief), for appellant.

Carl J. Eastvold, of Ortonville, Minn. (F. W. Murphy, of Wheaton, Minn., on the brief), for appellees.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and MUNGER, District Judge.

VAN VALKENBURGH, Circuit Judge.

Appellees John M. Kaercher and Ross C. Kaercher are the sons of A. B. Kaercher, deceased. They had two brothers, C. E. Kaercher and L. A. Kaercher. The family lived at Ortonville, Minn. In 1924 the estate of A. B. Kaercher was indebted to the Citizens' National Bank of Ortonville, Minn., as also were his four sons above named. This indebtedness aggregated approximately $10,500. In December, 1924, the bank, being desirous of adjusting this indebtedness, entered into negotiations with the Kaerchers, which were conducted largely by Ross C. Kaercher on the one side, and by the president, cashier, and two of the larger stockholders of the bank on the other. These negotiations resulted in an agreement which appears in the record as Exhibit X, and is in the words and figures following:

"This agreement, made and entered into this 22 day of Dec., 1924, by and between the Citizens National Bank of Ortonville, Minnesota, a corporation, party of the first part and John M. Kaercher, Cecil E. Kaercher, R. C. Kaercher and L. A. Kaercher, parties of the second part:

"Whereas, the party of the first part is the owner of certain judgments filed against the estate of A. B. Kaercher in the Probate Court of Big Stone County, Minnesota, in the following amounts, to-wit:

"$1,845.50    $875.00    $722.50    $3,000. $192.81 $327.50 $719.05 and interest accrued.

"Whereas, said claims have been assigned, transferred and sold to the parties of the second part in consideration Ten thousand Six hundred six & 96/100 Dollars by deeding to the party of the first part, the following described lands situate in the County of Big Stone, State of Minnesota, described as the West half (W½) of the Northwest Quarter (NW¼) and the Southwest quarter (SW¼) of section thirty-six (36), and East half (E½) and the Southeast quarter (SE¼) of the Southwest quarter (SW¼) of section thirty-five (35), Township one hundred twenty-four (124), Range forty-five (45), and Whereas, ~~Party of the first part as a banking corporation does not wish to carry the said land above described as an asset in their bank.~~

"Now, therefore, for the consideration hereinbefore mentioned and other valuable consideration, the parties of the second part hereby agree and do make their promissory notes in the following amounts:

John M. Kaercher........2,950.00
R. C. Kaercher..........3,050.00
L. A. Kaercher.........2,403.20
C. E. Kaercher..........2,203.76

as accommodation notes, which accommodation notes, parties of the second part agree to renew from time to time as the first party may request and to keep said notes in good standing for a period of 5 years, but in any event said accommodation notes shall be cancelled and returned if said party of the first part before said 5 years transfers or sells said above described premises, it being expressly understood that at the end of 5 years, the said party of the first part is to give up and cancel said accommodation notes.

"It is further agreed, by the party of the first part that said accommodation notes are not to be transferred or sold and that the party of the first part agrees that it will at all times defend the parties of the second part in any action, claim or lien that might be brought in which said notes are in any way involved.

"It is further agreed and expressly assented to by the party of the first part that said notes are given only as accommodation notes and have no other purpose.

"In Testimony Whereof, Said parties hereto affix their and its names and seals the day and year above written.

"Citizens National Bank of Ortonville, Minnesota, a corporation, By H. F. Thompson, Its Pres., By W. Kelly, Its Cashier, Party of the first part.

"John M. Kaercher, Cecil E. Kaercher, R. C. Kaercher, L. A. Kaercher, Parties of the second part."

The notes above described were renewed on or about December 10, 1925. December 23, 1926, the Citizens' National Bank was declared insolvent by the Comptroller of the Currency, and one William Ryder was duly appointed receiver. The appellant in these cases is his successor. October 18, 1928, the receiver brought suits against John M. and Ross C. Kaercher upon their notes so renewed. The defense tendered was that said notes were purely accommodation notes, were without consideration, and void. The cases were consolidated for trial, and, at the close of all the testimony, the trial judge directed a verdict in favor of appellees.

In the testimony it appears that the Kaercher brothers procured from the estate of one Geenty and wife the land, consisting of six hundred acres, described in Exhibit X. This land was stated, without contradiction, to be worth $75 per acre during 1924, the year when the agreement between the bank and the Kaerchers was made. The latter mortgaged it to the Ætna Life Insurance Company for $24,000; there was also a second mortgage of $2,600. This left an equity in the land of something more than $18,000. Pursuant to the terms of the said agreement, the Kaerchers, at the request of the officers of the bank, deeded the land to Kelly, the cashier; he in turn made a deed, the name of the grantee being left blank. It is clear from the evidence that it was the purpose to dispose of this real estate and that the name of the grantee was left blank in order that the transfer might be made directly to the purchaser. Cashier Kelly testifies:

"The deed was shown to the Comptroller in reports to him and the examiner was shown the title in the bank with the deed to me. I executed a deed to that land in blank and that was in the bank to be used when the bank sold the land. It was executed shortly after the bank got the deed from Kaerchers."

The bank kept a book entitled "Other Real Estate," which contained a description apparently of real estate held permanently

by the bank apart from, if not including, the bank building itself, or the immediate premises upon which the banking business was conducted. The cashier further testifies as follows:

"A. We had another book in the bank with a list of every farm the bank had and this Geenty farm was included in it, the White farm, the Jackson farm, the Geenty farm and the Pullis farm.

"Q. Where was that book kept? A. In the vault.

"Q. And this Geenty farm was listed in that book? A. Yes, sir.

"Q. Was it listed in your report as other real estate? A. No, sir, it was not. It was not carried as other real estate."

It is evident that this land was not carried in the general land account of the bank for the reason that it was intended to be disposed of and not kept permanently, as is a bank building and real estate of that character. It was taken in settlement of the Kaercher indebtedness, and apparently was intended to be disposed of and its value realized as soon as practicable.

▮ The first three assignments of error challenge the action of the court in directing verdicts for appellees. To this action no exception was taken. The question is therefore not properly preserved for review. If, however, we consider the merits, we must arrive at the same conclusion reached by the trial court. Counsel for appellant seek to invest the receiver with powers and rights exceeding those of the bank itself, challenge the power of its president and cashier to enter into the agreement made, and accuse the appellees of bad faith in that the notes in question are conceived to have been used to deceive examiners and Comptroller as to the exact financial condition of the bank. To these contentions there are many convincing answers. The receiver of an insolvent bank stands in no better position than the bank stood as a going concern. Rankin, Receiver, v. City National Bank, 208 U. S. 541, 28 S. Ct. 346, 52 L. Ed. 610; Peterson v. Tillinghast (C. C. A. 6) 192 F. 287; Yates Center Nat. Bank v. Lauber (D. C.) 240 F. 237; Cutler v. Fry (D. C.) 240 F. 238; Yates Center Nat. Bank v. Schaede (D. C.) 240 F. 240; Id. (C. C. A. 8) 240 F. 241.

Conceding that appellees were indorsers for accommodation merely, it cannot be contended that the Citizens' National Bank, while a going concern, could have maintained actions against them to recover on the notes.

Cherry v. City Nat. Bank (C. C. A. 8) 144 F. 587, 591.

▮ It is probable, although not convincingly shown by the record, that the bank presented these notes to examiner and Comptroller as assets of the bank. The possession of the Geenty land, and the connection in which it was acquired, were not concealed. There is nothing to show that appellees knew of, or participated in, any purpose of deceit on the bank's part if it existed. But, be this as it may, the result is not affected, because the court will not lend its assistance in any way towards carrying out an illegal contract, nor will it enforce any alleged rights directly springing from such a contract. McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117. In this view the bank itself could not have collected, nor is the receiver more advantageously situated. Yates Center Nat. Bank v. Lauber; Cutler v. Fry, and Yates Center Nat. Bank v. Schaede, supra.

▮▮ Furthermore, it is to be remembered that the bank continued to be a going concern for two years after Exhibit X was entered into and the terms of that agreement were executed. Its solvency at that time must be presumed, and there is no showing to the contrary. As a going concern it had full power to collect its debts, and its officers were empowered to act for it, and to employ means and methods best adapted to the desired end without special authority from the board of directors. Undoubtedly they could take real estate for this purpose, and the uncontradicted evidence is that the reasonable equity in the land over incumbrances was nearly double the debt of the Kaercher family. First Nat. Bank v. Nat. Exchange Bank, 92 U. S. 122, 127, 23 L. Ed. 679; People's Bank v. Manufacturers' National Bank, 101 U. S. 181, 25 L. Ed. 907; Martin v. Webb, 110 U. S. 7, 3 S. Ct. 428, 28 L. Ed. 49; Auten v. United States Nat. Bank, 174 U. S. 125, 19 S. Ct. 628, 43 L. Ed. 920; Cherry v. City Nat. Bank (C. C. A. 8) 144 F. 587; Lucey Mfg. Corporation v. Morlan (C. C. A. 9) 14 F.(2d) 920.

▮ Notes executed to a bank without consideration and solely for accommodation cannot be enforced if remaining in the hands of the bank. Rankin v. City National Bank, and Peterson v. Tillinghast, supra; Grisim v. Live Stock State Bank, 167 Minn. 93, 208 N. W. 805; First Nat. Bank v. Felt, 100 Iowa, 680, 69 N. W. 1057; City Nat. Bank v. Dwyer, 47 S. D. 567, 200 N. W. 109.

The contract of December 22, 1924, is conclusive to the effect that the notes sued on were given solely for accommodation and were clearly without consideration. The bank in terms accepted the land conveyed to it through its cashier in full settlement of the Kaercher-indebtedness to it. There is in the record neither direct nor substantial circumstantial evidence to the contrary.

■■ "Where the facts are admitted or are undisputed, and are such that reasonable men can draw but one conclusion from them, it is the duty of the court to declare that conclusion to the jury." Northwestern Fuel Co. v. Danielson (C. C. A. 8) 57 F. 915, 916.

So also where the situation is such that, if a contrary verdict were reached, the court would be compelled to set the same aside. The rule announced is so universal in both federal and state jurisdictions that further citation of authority is unnecessary.

■ The fourth assignment is to the action of the court in admitting the testimony of appellees as to the value of the Geenty land and the want of consideration for the notes sued on. In addition to the fact that this testimony was competent, it is to be noted that it was received without objection or exception.

· The remaining assignments have been carefully considered. They embody the contentions of appellant which have been hereinabove stated and found to be without merit. The pleadings framed no issue embracing these contentions.

It follows that the judgments below must be and are affirmed.