## FIRST & FARMERS STATE BANK OF GHENT, BY J. N. PEYTON, v. MAURICE SOENEN.[1]

October 6, 1933.

No. 29,531.

*J. V. Williams* and *D. F. Nordstrom,* for appellant.

*Charles L. DeReu,* for respondent.

[1]Reported in 250 N. W. 359.

*OLSEN, Justice.*

Appeal by plaintiff from an order denying his alternative motion for judgment in his favor or for a new trial after verdict for defendant.

The action is one by the commissioner of banks in charge of liquidation of the First & Farmers State Bank of Ghent to recover on a promissory note for $750 given by the defendant to the bank for the purchase of five shares of its stock. The note is dated October 19, 1931, due in six months, with interest at six per cent. The note is a renewal of a like note given April 20, 1931. At the time of the renewal defendant paid $22.50, the interest on the prior note.

In April, 1931, the bank was in difficulties. It had a large amount of doubtful and nonliquid paper and some $48,000 of real estate among its book assets, which the commissioner of banks objected to and required to be removed. A voluntary reorganization of the bank was undertaken. A meeting of the officers, directors, stockholders, and depositors of the bank was held. It was an informal and not a legally called meeting. Not all depositors were present. Defendant was a depositor in the bank and was present. Mr. Stutzman, a representative of the commissioner of banks, was present. A plan of reorganization was presented and explained. The bank had a capital stock of $50,000. It was not closed or taken over by the commissioner for liquidation. The plan as presented was, in substance, that the then stockholders should surrender and have canceled the entire stock of the bank, and that 500 shares of new stock should be sold at $150 per share, so as to bring into the bank $75,000 new capital assets; that the depositors, except municipalities and some others having preference and those having individual deposits of less than $100, should be asked to agree to a reduction of 30 per cent on their deposits, and to agree that the remainder be withdrawn only over a period of three years, one-third annually. It was estimated that if 75 per cent of the deposits so available for reduction were reduced 30 per cent and the stock sold as proposed, the bank would be in sound condition, and the real estate and objectionable paper could be removed from its book assets and placed

in a separate fund for the benefit of the depositors who had reduced their deposit claims. The representative of the commissioner of banks approved the plan. The old stockholders then surrendered their stock. The new stock was all subscribed for and sold, defendant buying and receiving five shares thereof. Those holding 81 per cent of the deposits subject to reduction signed agreements reducing their claims as planned. New directors and officers were elected by the new stockholders, and the bank continued in business until March 19, 1932, at which time it was closed and taken over by the commissioner of banks for liquidation.

Defendant denied liability on the note on two grounds: First, he claims that the bank stock was sold to him and the note given on condition that the holders of 90 per cent of the deposits should reduce their deposit claims 30 per cent and that all the stock should be sold for cash before the reorganization became effective, and that if this was not done the sale of the stock and giving of the note should not become effective and the note be returned; second, that Mr. Stutzman, at the meeting mentioned, and some officers of the bank at that meeting and thereafter, falsely and fraudulently stated and represented to him that 90 per cent of the depositors should reduce their claims 30 per cent and all stock should be paid for in cash before the reorganization should be completed, and that subsequently he made inquiry at the bank and was informed that this had been done; in other words, that the note was obtained through fraud. The plaintiff denied these claims and pleaded that in any event defendant was estopped from asserting these claimed defenses. Plaintiff's motion for a directed verdict was denied.

The court submitted to the jury the two defenses above stated and the question of estoppel. The jury found for defendant. It is conceded that the defendant and a few other stockholders did not pay cash for their stock, but gave their notes therefor, which notes were placed in the bank as assets and thereafter carried as such.

The question of whether, as a matter of law, the defendant is precluded or estopped from asserting the alleged defenses to the note is the decisive question presented.

The law on that question is well settled in this state. As stated in Rathbun v. Goldman, 164 Minn. 507, 510, 205 N. W. 436, 437:

"After the corporation has become insolvent and a receiver has been appointed, the rights of creditors would be affected if the defendant were permitted to assert the fraud of the corporation as a bar to the proceeding to enforce his liability as a stockholder, and the cases cited hold that to escape liability the defendant must have exercised a high degree of diligence to ascertain the facts and rescind the subscription for the stock, or the contract for the sale thereof, before the rights of creditors have intervened."

It is further held that the same rule applies in an action by the receiver, the commissioner of banks, to recover the purchase price of the stock.

In Bartlett v. Stephens, 137 Minn. 213, 216, 163 N. W. 288, 289, it is stated:

"It may be too broad a statement to say that one who has been induced by fraud to acquire stock in a corporation, can in no case be relieved from liability by proceedings taken after the bankruptcy of the concern. The bankruptcy might follow so closely on the heels of the fraud that no amount of diligence could have relieved him before it came. But, if there can be relief from liability in any case, it is only when there is no laches or estoppel."

In Chippewa County State Bank v. Kief, 179 Minn. 284, 287, 229 N. W. 130, 131, we held:

"After the bank became insolvent and was taken over by the commissioner of banks for liquidation, even an attempted prior rescission is insufficient as a defense to recovery on a note given for stock or as a cause of action to recover money paid for stock, unless prompt legal action has been taken to obtain a rescission, or unless the failure of the bank follows so closely after the stock purchase that there has not been reasonable opportunity to discover the fraud and seek rescission."

We need not here repeat the long line of authorities cited in that case. We cite, in addition thereto, Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. ed. 822.

Defendant claims that it was fraudulently represented to him that all stock had been or should be sold for cash and that 90 per cent of the depositors should agree to a 30 per cent reduction of their deposit claims. But he purchased and received his own stock, not for cash, but by giving the bank his promissory note for the price. He knew then and at all times thereafter that not all the stock had been sold for cash. With that knowledge, he permitted the bank to take and hold his note as part of its assets for the payment of its liability to depositors and creditors. When the first six-months note became due, he paid the interest thereon and gave a renewal note. Knowing that the claimed representation as to the sale of all stock for cash was not true, he was put on inquiry and had sufficient notice that the alleged representations and promises were not true and was required to take prompt legal steps to rescind. He was present at the meeting when the reorganization plan was explained and adopted, and at a subsequent meeting of the new stockholders, and had fair opportunity to ascertain and know what was being done. Here, as in Chippewa County State Bank v. Kief, 179 Minn. 284, 229 N. W. 130, there is no evidence or claim that the defendant took any legal steps to rescind his purchase of the stock until his answer was interposed in this action. And see Barnes v. Nelson, 179 Minn. 259, 228 N. W. 917. Defendant did testify that he made some inquiries at the bank after the first note was given and at the time he gave his renewal note as to whether the representations regarding the sale of stock for cash and reduction of 90 per cent of deposits had been complied with, and that he was informed the conditions had been complied with. The high degree of care and diligence required is not shown in this case.

As to the claimed conditional sale of the stock and giving of the note, the same rule of estoppel applies. Attention is also called to Markville State Bank v. Steinbring, 179 Minn. 246, 228 N. W. 757. There the defendant gave to the bank a promissory note to aid in the reorganization of the bank. The president of the bank, in the name of the bank, gave to defendant a written receipt and agreement stating that the note and a mortgage accompanying same were

to be used by the bank for a period of three years, but to be returned in case the bank failed to reopen on or before February 15, 1923. The bank was not reopened until a later date. The president of the bank also made oral statements to the defendant at the time the note was given that the note was not to be paid, but to be used by the bank for three years and then returned. The decision holds that the president or officers of the bank had no authority to make such an agreement.

The statute requiring new banks to have all stock paid for in cash before commencing business does not here apply. No other points raised require special consideration here.

The trial court should have directed a verdict in plaintiff's favor, and, failing so to do, should have ordered judgment for plaintiff notwithstanding the verdict.

Order reversed and case remanded with directions to the trial court to order and enter judgment in plaintiff's favor for the amount of the note sued upon and interest.