### E. F. SEARING v. MINNIE C. HUBBARD.[1]

February 1, 1935.

No. 30,146.

[1]Reported in 258 N. W. 588.

392

 █

*Morse & Morse,* for appellant.

*H. L. & J. W. Schmitt* and *Charlotte Farrish,* for respondent.

HOLT, JUSTICE.

Suit on two promissory notes, one for $1,050 and the other for $700, made by defendant to the order of Commercial State Bank of Mankato, the first due March 4, 1932, and the second due March 22, 1932. Plaintiff alleged that before maturity the notes for value were indorsed and delivered to plaintiff. The answer admitted the execution of the notes, averred that they were given without consideration for the accommodation of the payee bank, and denied that plaintiff paid value for the same. At the close of the testimony, on motion, a verdict was returned in favor of plaintiff. Defendant's motion in the alternative for judgment notwithstanding the verdict or a new trial was denied, and she appeals.

The testimony stated most favorably to defendant is, in short, as follows: The Commercial State Bank, with $25,000 capital stock, in 1921 decided to double its stock so as to obtain funds to provide a bank building. This additional stock was placed on sale at $150 a share, the par value of which was $100 a share. Some of the old shareholders and officers of the bank bought of the new issue, giving their promissory notes therefor. Defendant's father, E. Schoyen, was an officer of the bank and was interested in promoting the sale of this stock. The inference is that the sale lagged, and he asked defendant to help. She testified that her father asked her to sign a note to the bank for $3,150 to help the bank and that "if I would sign this note * * * I would never be called upon to pay it, * * * that it would never go out of the hands of the bank * * * he said as the stock was sold that the note would be reduced." She also testified that no stock was ever delivered to her; that she never paid or was asked to pay any interest on the note or on the renewals. This original transaction was in 1921, and

the note was renewed from time to time and all but seven shares of the stock were sold when the renewal note in suit was given. Her father's testimony was to the effect that all the shares of the new issue had been disposed of except these 21 shares when he requested defendant's help as she testified to. He told her the stock would be sold and that this note would be reduced from time to time as the stock was sold. Nothing was said as to where the stock certificate was to be kept. He told her: "Payment of the note would come in sales of the stock; she would never have to make any payments personally. * * * The bank would sell it."

With respect to the $700 note, the testimony is that one Fowler had given his note for $1,500 for ten shares of the new issue of stock, and when he threatened to sue the bank for a return of his note defendant's father asked her to come to the rescue, and between them it was arranged that the father would give his note for $800 to the bank and defendant would give hers for $700 to replace the $1,500 note of Fowler, so that it might be returned to him and the suit averted. That was done, and the $700 note in suit is a renewal of the one so given. Mr. Schoyen testified that the Fowler stock would be sold and applied the same as the stock issued to defendant for her $3,150 note.

Could a jury be permitted to find that either of these notes was an accommodation note? Or was there value given by the bank to the maker of the note? For the $3,150 note 21 shares of the new capital stock were issued to defendant. She knew that it had been issued to her although she had not had or ever did have the certificate in her hand. She left the details of the transaction to her father. But at least one dividend check upon this stock was indorsed by her personally; the other dividend checks thereon were indorsed by her father, and she does not deny his authority to do so for her. The stock was not kept by the bank, although kept in a box at the bank. Her father testified:

"I held the stock in the bank; I didn't say anything to her about it.

Q. "Did you hold it for her?

A. "Yes, I held it; it had to be held in somebody's name."

When any share was sold, the old certificate was surrendered and canceled, a new certificate issued to the purchaser for the shares bought, and a new certificate issued to defendant for the shares not sold. Mr. Schoyen always attended to this matter. No other bank officer or employe participated in the transaction. This continued for over ten years, during all of which time the note of defendant appeared as an asset of the bank, and these 21 shares of stock appeared as owned by defendant, except the shares thereof sold from time to time. Not only did the bank records so show, but the law requires that the president and cashier shall at all times keep an accurate verified list of all the stockholders with the amount of shares held by each, and on May 1 annually file a copy thereof with the register of deeds and the bank examiner. 2 Mason Minn. St. 1927, § 7669. After this stock was issued to defendant and her note taken for the price thereof the bank could not lend on nor purchase its own stock. 2 Mason Minn. St. 1927, § 7676. Defendant does not claim that she did not know that she was listed as owner and holder of these 21 shares of stock all these years upon the records mentioned. That the bank agreed to sell this stock and apply the proceeds on her note does not render her note accommodation paper in the sense that there was no consideration passing from the bank to her in the transaction. Suppose this stock had greatly increased in value and the dividends had exceeded the interest on the note, could anyone but defendant have claimed the benefit thereof under the testimony of Schoyen and defendant? We think not.

There was this evidence regarding "stock notes" given by Mr. Crane, a director at the time:

"They had so many shares that were not sold at that time, they wished to carry them as sold, so they placed them in each member of the board's name, so many of them, and carried them in that manner until sold; as quick as they were sold then they were to be taken out and the notes destroyed. * * * The notes were not to bear interest, nor were not to be collected, never would you worry about them or have them placed against you; that was the sum and substance of the meeting.

Q. "Anything said about whether they were to be disposed of or not?

A. "No, sir, nothing was said."

The foregoing is what took place at a meeting of the board of directors with respect to the disposal of the new capital stock and taking the notes of directors therefor. Can it be possible that a director could come into court and claim that a note given by him for capital stock of the bank issued in his name was an accommodation note and without consideration after having for ten years permitted the note and its renewal to appear among the assets of the bank and the records of the bank, of the bank examiner, and of the register of deeds during said time showing that he was the holder of the stock for which the note was ostensibly given? Obviously such a claim would be untenable.

With the above in mind, it is clear that the $700 note must also be held to have been given for value and is not an accommodation note. Stock had been issued to Fowler about the time it was to defendant. It appears that Fowler was not a director, at least not when he insisted on the return of his note ten years later. He did not testify, and so no defense as to his note was made out. Defendant and her father agreed to replace the Fowler note by their notes of $700 and $800, respectively. They both testified that the Fowler stock was to be sold and applied on the notes. So defendant as well as her father obtained value for their notes in the Fowler stock, and the bank parted with the Fowler note. Hence the $700 note involved in the second cause of action was no more an accommodation note than the $1,050 note involved in the first cause of action.

Defendant relies on National Citizens Bank v. Bowen, 109 Minn. 473, 124 N. W. 241; Grisim v. Live Stock State Bank, 167 Minn. 93, 208 N. W. 805; Hayes v. Midland Credit Co. 173 Minn. 554, 218 N. W. 106. In the first case there were two makers, and the court held that if there was a consideration moving to one, but not as to the other, the latter could make the claim that he was an accommodation maker. In the decision the court makes this statement [109

Minn. 476] : "If there was a valuable consideration moving between the maker and payee, the claim of accommodation could have no possible foundation to rest upon." In the Grisim case, 167 Minn. 93, 208 N. W. 805, the note and mortgage given by the plaintiff were purely accommodation paper for which the plaintiff received nothing. No stock or property was set apart to her out of which the note or mortgage was to be paid. It was a temporary loan of credit. The Hayes case, 173 Minn. 554, 218 N. W. 106, does not involve an instrument for which stock was issued to the maker or for the maker's use as here.

Having reached the conclusion that these notes were not accommodation notes, it is not necessary to decide the other questions raised by either party, viz.: defendant's claim that plaintiff's rights are no greater than the payee's, the bank's, because in addition to the indorsement there was an assignment in trust. The indorsement and assignment to the trustee forming one contract, citing 8 C. J. 357, and 2 Mason Minn. St. 1927, § 7692, which provides that a bank may "effect a transfer of its assets and liabilities to another bank for the purpose of consolidating therewith, but the same shall be without prejudice to the creditors of either." Defendant also claims that the trustee is not a holder in due course and that the title is defective and restrictive under 2 Mason Minn. St. 1927, §§ 7079 and 7095. Nor need we consider plaintiff's contention that under 2 Mason Minn St. 1927, § 7072, even if the notes were accommodation notes, defendant "is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party," it being contended that the beneficiaries of the trust were holders for value. As stated above, these claims need not be determined for we think the notes were not accommodation notes.

Plaintiff also urges estoppel. Even if it be assumed that the notes were accommodation notes, the testimony, above set out most favorably to defendant, estops her from so claiming after having for more than ten years permitted herself to be held out as a stockholder, and her notes as assets of the payee bank. The facts are not as strong in favor of estoppel in First & Farmers State Bank

v. Soenen, 189 Minn. 541, 250 N. W. 359, where it was held as a matter of law that the defendant was estopped, as they are in the case at bar. There, there was a claim of fraud; here, there is no suggestion that defendant was in any manner misled. There the holding out was a short time; here for a decade.

The order is affirmed.

STONE, JUSTICE (concurring).

While I concur in all that has been said by Mr. Justice Holt, I beg to add the following. The conclusion, as matter of law, being that defendant's notes were given for valuable consideration, their status as complete written contracts is established. Hence all testimony for the defendant concerning the alleged contemporaneous oral arrangements between herself and her father became incompetent under the rule of such cases as Johnson v. Benham, 163 Minn. 31, 203 N. W. 444, and Brown v. Backer, 166 Minn. 50, 207 N. W. 20.

