## ALEXANDER ET AL. *v.* CAPITOL LUMBER COMPANY.

[No. 22,539. Filed April 28, 1914.]

1. SALES.—*Consideration.—Mutual Obligations.*—A contract for the manufacture and sale of lumber, specifying the quantity and kinds of lumber and the prices for each kind, and providing that, on the seller commencing to manufacture same, the buyer will send his inspector to take over and grade same as manufactured, and that the buyer will make partial payment for the lumber so taken over, and will pay a part of the balance when the lumber is loaded for shipment, and credit the balance on notes executed by the seller, imports mutual obligatory promises and undertakings and is supported by a valuable consideration. p. 532.

2. CONTRACTS.—*Construction.—Evidence.*—While a written contract should furnish the medium of its own interpretation when unambiguous, where it is doubtful or ambiguous, the circumstances, situation of the parties, and conditions under which it was entered into, may be shown by parol to enable the court to interpret it, but not for the purpose of contradicting, extending or enlarging its terms. p. 532.

3. PRINCIPAL AND SURETY.—*Discharge of Surety.—Extention of Time of Payment.—Contracts.*—Where the maker of notes, about a month before maturity thereof, contracted to manufacture and sell lumber to the payee, who agreed to pay part of the price on inspection, and a part of the balance when the lumber was loaded for shipment, and to credit the balance on the notes, the contract did not operate to release the surety from liability on the notes on the theory that it extended the time for the payment of the notes, since, even though the parties to the contract understood that none of the lumber could be furnished before maturity, there was no extension for a definite time and there was no agreement in the contract not to pursue collection or to carry the notes until payment could be made in lumber. pp. 533, 534, 537.

4. PRINCIPAL AND SURETY.—*Release of Surety.—Extending Time of Payment.*—An extension of the time of payment, in order to release a surety, must be for a definite time. p. 533.

5. PRINCIPAL AND SURETY.—*Release of Surety.*—*Extending Time of Payment.*—A valid extension of the time of payment, even for. a day, will release a surety.  p. 534.

6. PRINCIPAL AND SURETY.—*Release of Surety.*—*Extending Time of Payment.*—Neither the question of whether an agreement between the payee and maker of a note will bar an action on the note against the maker during the period covered by such agreement, nor the effect, beneficial or otherwise, that the agreement may have toward the surety, is of any importance in determining whether such agreement amounts to an extension of the time of paying the note so as to release the surety.  p. 535.

7. EVIDENCE.—*Inference on Inference.*—*Discharge of Surety.*—An inference of the extension of the time of payment of a note so as to release the surety cannot be based on an inference of the intention of the maker and payee, since one inference of fact cannot be based upon another inference.  p. 538.

From Johnson Circuit Court; *William E. Deupree,* Judge.

Action by the Capitol Lumber Company against Samuel V. Anderson and another. From a judgment for plaintiff, the defendants appeal. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Affirmed.*

*E. A. McAlpin, R. M. Miller* and *H. C. Barnett,* for appellants.

*Means & Buenting,* for appellee.

MYERS, J.—Action was begun March 10, 1910, by appellee against appellants on a promissory note, maturing March 4, 1909. Alexander answered in three paragraphs, the first a general denial, the second payment. By the third paragraph Alexander alleges his execution of the note as surety for Anderson, and that the fact was known to appellee, and that on February 9, 1909, the latter and Anderson entered into a written agreement, setting it out, the material parts of which are as follows:

"Feb. 3rd, 1909.

Mr. Geo. W. Anderson, Sumner, Miss. Dear Sir:—As per conversation with you, we hereby agree to purchase from you, approximately the following amounts of lumber at prices attached f. o. b. cars Evans' Spur, Sumner, Miss. (Here follows a designated quantity of par-

ticular kinds of lumber, and the prices for each kind, aggregating over $8,000 in value). It is understood that all the above lumber is to be well manufactured, and sawn into one-inch lumber with the exception of the item of good sound bridge oak, which is to be two inches thick. It is further understood that you are to handle this lumber promptly when sawn, and get the same on sticks without any delay; sticking the same in such manner as to produce best results. When you commence manufacturing, we will send our inspector to take over the lumber for us, as fast as manufactured, grading and tallying same. We will then make you a payment by note or cash, of one-half of the value, less $2.00 per M. of the lumber taken over by our inspector. The $2.00 per M. mentioned being held back as a further guarantee that you will deliver our lumber to the railroad, and load on board the cars. As soon as the lumber is loaded on cars and invoice and bill of lading for same forwarded to us we will pay you the balance, if any, in cash, up to one-half of the value of the lumber loaded; balance of the value to be credited one-half on your note endorsed by Mr. Alexander, and one-half on your note which we hold without endorsement. Yours truly, Capitol Lumber Co.

Signed in duplicate by Wm. F. Johnson, Treas. and Gen. Mgr., this 3rd day of February, 1909. Accepted this Feb. 3, 1909. George Anderson.''

That the contract was executed by appellee through William F. Johnson, its general manager. That at the time the contract was executed, the parties to it were in the city of Indianapolis, Indiana, and it was necessary in order for Anderson to perform the terms of said contract, on his part to be performed, to go to Mississippi, a distance of several hundred miles, and employ and organize the necessary labor, and procure and set up the necessary machinery for sawing, and delivering the timber as in the contract provided, all of which was at the time well known by appellee. That it was impossible for Anderson to go to Mississippi and make the necessary preparations for sawing and delivering the lumber and thereafter to perform the terms of said contract, on his part to be performed, until after March 4, 1909,

all of which appellee at the time of the execution of the contract well knew. That prior to the execution of this contract, Johnson, Anderson, and appellee had had long experience in handling and manufacturing lumber, and that it was fully understood, contemplated, and intended by the parties to the contract at the time it was executed, and in the execution of it, that the performance by Anderson of the terms of the contract, on his part to be performed, could not and would not be completed, until after the maturity of said note. That it was further understood, contemplated and intended by the parties to the contract, when the same was executed, that deliveries of the lumber should be made by Anderson from time to time after the maturity of the note, and that a part of the purchase price of each delivery should be treated as a payment on the note, and that the note should not, and would not be collected until after the performance by Anderson of the terms and conditions of the contract, on his part to be performed, or until after a reasonable time for such performance had elapsed, except as the same should be in part collected by the receipt of the deliveries of lumber as in the contract provided, and as contemplated and intended by the parties thereto. That by reason of the execution of the contract, the time of payment of the note was extended beyond the date of its maturity, and until such time as Anderson could with reasonable diligence, perform the terms of the contract. That after the contract was executed, Anderson went to Mississippi, employed and organized the necessary labor, and procured and set up the necessary machinery for cutting the lumber and proceeded to cut and deliver the same, that he was engaged in cutting the lumber and delivering it to appellee, as by the contract required, at the time of the maturity of the note, and so continued until long after that time, and that during all that time, appellee received and accepted deliveries of the lumber, and after the note became due, acknowledged and endorsed a payment upon the note

for and on account of a part of the lumber delivered to it by Anderson, in the sum of $240.70, December 9, 1909; hence discharge is claimed.

A trial by the court resulted in a finding and judgment in favor of appellee and against appellants for the sum of $1,951.49. The court also found that Anderson executed the note as principal and Alexander as surety, and that the property of Anderson should be first exhausted.

The only error relied on is that the court erred in sustaining appellee's demurrer to the third paragraph of answer of Alexander.

It is conceded by appellants, that an extension of time which will release a surety, must be for a definite period, for a valuable consideration, and granted without the consent of the surety by the holder, with knowledge of the suretyship; but it is contended that where there is some legal consideration accepted as sufficient by the parties, the consideration will not be inquired into by the courts, after the contract has been performed in whole, or in part, and as applied to the contract in this case, that any period of extension of time for payment, is sufficiently definite to release a surety, if there are sufficient data given, from which the exact period can be ascertained; upon the maxim that that is certain which can be made certain, and that a definite time need not be stated, nor need it be stated in so many words, that an extension is given, if that is the intent, nor that it should be of such character as to prevent the holder from maintaining an action, prior to the expiration of the extended time. It is the theory of appellee, that as all prior negotiations and all intendments must be regarded as merged in the written instrument, the agreement cannot be enlarged by allegations of the intendment or understanding of the parties, or the conditions then present, and that a contract of extension to discharge a surety, must be such as to tie the hands of the creditor for a definite time, for a valuable consideration.

We have no difficulty in determining that the contract in regard to the lumber, was supported by a valuable consideration as to both parties to it. Its terms import

1. mutual obligatory promises and undertakings, with presumptive profits to each, involving large sums of money in expenditures, in the production of lumber on the one hand, and in payment for it, on the other, coupled with part performance, in addition to the fact of additional security on an unendorsed note held by appellee against Alexander, the amount of which does not appear, nor does it appear that Alexander was insolvent. *Polk* v. *Johnson* (1903), 160 Ind. 292, 299, 66 N. E. 752, 98 Am. St. 274. The principal of the note sued on is $1,787, dated March 4, 1908, due in one year, with six per cent interest. But one-fourth the price of the contracted lumber would about equal the note and interest, and the note was not due when the contract was made. Appellants concede that while no definite time of extension is fixed by the contract, that taking the conditions as they were at the time, with the allegation that it was impossible that any lumber could be furnished before the note became due, it was the necessary effect and intendment of the agreement, to postpone payment such length of time as might reasonably be necessary to enable Anderson to furnish the lumber; and that it is a question of fact as to what that time should be, and when determined, it would fix the time of the extension, and that whether an extension of time was intended, is a question of fact, when viewed in the light of the conditions, and circumstances surrounding the transaction. It cannot be doubted that while a written contract must fur-

2. nish the medium of its own interpretation when unambiguous, it is equally well settled that where it is doubtful or ambiguous, the circumstances, situation of the parties, and conditions under which it is entered into, may be shown by parol, not for the purpose of contradicting, extending, or enlarging the written agreement, by allega-

tions as to the intention or understanding, but to enable the court to interpret it. *Warrum* v. *White* (1909), 171 Ind. 574, 86 N. E. 959; *Barney* v. *Indiana R. Co.* (1901), 157 Ind. 228, 61 N. E. 194; *Ransdel* v. *Moore* (1899), 153 Ind. 393, 53 N. E. 767, 53 L. R. A. 753; *H. G. Olds Wagon Works* v. *Coombs* (1890), 124 Ind. 62, 24 N. E. 589. There is a very marked difference between putting the court in possession of the situation and conditions of the parties as an aid to interpretation, and the interpretation itself.

Stated in the simplest form, it is conceded by appellants, that taking the contract without the extrinsic aid of conditions and circumstances surrounding its making, it does not show a contract of extension for a definite period. The first inquiry then is—Is it ambiguous, or uncertain as to what it does mean, or as to whether there was an extension intended, viewed in the light of the allegations of the answer? Taking the allegations of the answer as true, can the court say as a matter of law, that a valid extension of the time to a definite period appears, or that a covenant not to sue, extending to a definite period beyond the maturity of the note, appears? Our cases have held to a stringent rule on the question of definiteness of the time. *Gipson* v. *Ogden* (1885), 100 Ind. 20, 22, and cases cited; *Durbin* v. *Northwestern Scraper Co.* (1905), 36 Ind. App. 123, 73 N. E. 297. The proposition then is, taking the allegations of the answer as made, what aid could they give the court in determining whether there was in fact, or in law, by the agreement of the parties, an extension of time for a definite period, and if so, what was that time? If it be conceded that it should be a reasonable time, who is to determine what is reasonable? That would certainly have to be left to the jury to be determined, not from the contract, but by inference or implication; and a reasonable time is not a definite time. It would be a question for the jury, not because it is fixed and definite, but because it is

uncertain, and indefinite, that is, the jury would fix the time, and not the contract, nor the court, upon construction of it. If it was, as alleged, the understanding and intention "that the note should not, and would not be collected until after the performance by Anderson of the terms and conditions of the contract, on his part to be performed, or until after a reasonable time for such performance had elapsed," how is that to be gathered from the contract, and situation of the parties? Given the situation, and conceding that no part of the lumber could be furnished before maturity of the note, is there anything in the contract or situation, which forces an inference of an agreement not to pursue collection, or to carry it until it could be paid by lumber? It is not alleged that there was an agreement to extend the time, but following the allegations quoted above, it is alleged, "that by reason of the execution of said contract, the time of payment of said note was extended beyond the date of its maturity, and until such time as Anderson could, with reasonable diligence, perform the terms of said contract," that is, that it was intended that the agreement should defer collection of the note, and that the contract operated to do so. How is that intention to be gathered? Under the theory of the answer, from parol evidence, showing the situation of the parties as impelling an inference of the intention, not as expressed by the agreement but from the situation, and the legal effect of the agreement, by virtue of the fact that there is an agreement to give credit on the note by lumber, which could not be manufactured until after the maturity of the note.

It will of course be conceded that if a valid extension is given, even for a day, that will release the surety. It is urged that payment is to be made by lumber. Conceding that it is an agreement for credit by lumber, that would be immaterial, unless a valid extension was agreed on. Merely giving credit, or agreeing to give credit, will not discharge the

surety.  Suppose the note had been due at the time, could it be the law that under such contract, the agreement as to credit could operate to suspend collection, or postpone payment?  Would it be anything more than indulgence?  Besides, appellants could not be interested in the manner of payment, unless there was a valid extension, and if there was such extension, they had no further interest.

There are cases which hold that the contract must be of such character as to bar an action by the holder of the note, before the time has expired, but it has been held in

6.  this court, that such covenant cannot bar a suit on the obligation, though it may be the ground of an action for damages for the breach.  *Vogel* v. *Harris* (1887), 112 Ind. 494, 14 N. E. 385; *Williams* v. *Scott* (1882), 83 Ind. 405.  Other cases have held that the contract must be such as to tie the hands of the creditor for a definite period.  *Abel* v. *Alexander* (1874), 45 Ind. 523, 15 Am. Rep. 270; *Menifee* v. *Clark* (1871), 35 Ind. 304.  It seems a gross incongruity to say that a contract of extension is no bar to enforcement of a note, and at the same time, that it releases a surety, because it does extend the time, and the surety is released because the creditor is bound, but whether as between the principal and the creditor, it is a bar, is wholly immaterial to the surety.  He is released or is not, and his rights and obligations are fixed in either case.  The apparent solecism seems to have grown out of the former distinctions between law and equity.  The early cases in this State on the question arose prior to the enactment of our code; such cases are, *Tate* v. *Wymond* (1844), 7 Blackf. 240, where it was held that a special contract (one under seal) could not be modified by another of less dignity, and this case was followed in *Carr* v. *Howard* (1846), 8 Blackf. 190, in which it was held that the agreement there present did not discharge the surety at law; inferentially, that it would discharge him in equity.  *Devers* v. *Ross* (1853), 10 Gratt. (Va.) 252, 60 Am. Dec. 331 and notes;

*Wittmer* v. *Ellison* (1874), 72 Ill. 301. The same is true of *Harbert* v. *Dumont* (1852), 3 Ind. 346, which case arose prior to the going into effect of the code of 1852, but by the code, the distinctions between actions and defenses at law and in equity, as well as the common law sanctity of specialty contracts, or those under seal, were abolished. 2 R. S. 1852 p. 27, §1; 2 R. S. 1852 p. 39, §56, subd. 3; 2 R. S. 1852 p. 90, §273. So that in the case of *Dickerson* v. *Board, etc.* (1855), 6 Ind. 128, the status of which seems to have been fixed prior to the adoption of the code, while it adhered to the earlier rule that the contract need not be of such character as to bar suit against the principal, the cases were reviewed, and it was held that the release could be pleaded by the surety as a defense at law, and as the only question the surety is interested in is the subject of extension or no extension, if he is released, no further inquiry need be made as to him, because he has no further interest in the matter. What may operate to release him is another matter, but that does not enter into the question of bar or no bar to an action against the principal. Many jurisdictions treat it as a bar. 32 Cyc. 197, 198, notes 20, 21. There are cases where the agreement for extension was held sufficiently specific, but the time in part indefinite, by such terms as "until the summer of 1871." *Abel* v. *Alexander, supra.* "Until after threshing." *Moulton* v. *Posten* (1881), 52 Wis. 169, 8 N. W. 621; For "twenty or thirty days." *Hamilton* v. *Prouty* (1880), 50 Wis. 592, 7 N. W. 659, 36 Am. Rep. 866. Other cases holding that "until fall." *Cherry* v. *Miller* (1881), 7 Lea (Tenn.) 305, and "until after harvest." *Findley* v. *Hill* (1880), 8 Or. 247, 34 Am. Rep. 578, was not sufficiently definite. There are also cases which hold that if the effect is to defer the time of payment, it is not essential that a time be fixed. *Cox* v. *Mobile, etc., R. Co.* (1861), 37 Ala. 320; *Bangs* v. *Strong* (1842), 10 Paige (N. Y.) 11; *Lambert* v. *Shitler* (1883), 62 Iowa 72, 17 N. W. 187. The force

of the Cox case is much diminished by the case of *David v. Malone* (1872), 48 Ala. 428, in which it was held that the surety must show injury to himself. These cases seem to be grounded on the proposition that by reason of the change of conditions, the surety cannot be subrogated to the rights of the creditor, except as those rights are modified by the agreement; that is, in effect, that the agreement must be harmful to the surety, but it seems to us that the better, and greater weight of authority is to the proposition that it is immaterial whether the contract is beneficial, or harmful to him.

In the case of *Bangs* v. *Strong, supra,* the contract on its face, and by its own force, extended the time, and in so far meets with our approval, but the reasoning of the chancellor as to the rights of the surety, if he had paid the debt, in assuming that the surety would be compelled to take his pay in land, instead of money, and subject to incumbrances, it seems to us, cannot be justified, and was aside from the case. The surety could not be affected by the contract, whether beneficial or otherwise to him, nor was it material whether he could be or not; he was either released or he was not, but he is not bound by the contract of extension, and the reason for his being released is the change of the terms and conditions of his contract, and leaves him to any rights he may be in a situation to assert.

While the conditions or situation of the parties may be shown as an aid to interpretation, the aid of the allegations of the answer, do not force the inference that

3. the contract was one for the postponement of collection, or to a definite time, or that it was so intended, or that it was anything more than indulgence, and it is still the duty of the court to interpret it, and not the province of the jury to do so. It is not alleged or claimed that there was fraud or mistake in the execution of the contract, and if the court were to open the matter to the implications or inferences which might arise from parol evidence,

it would be to permit the written contract to be varied, by showing or attempting to show that it means something other than the parties by the terms of the contract have said. If it be said that it is ambiguous, it is only so because it does not show an extension of time, which is claimed is shown by force of the contract, and because it is conceded that extension must be made to appear, when it would have been easy and practicable, by a few words to show that fact, either by express words, or necessary construction of the language used.

It appears to us that the contract is one of indulgence as the construction enforced from the allegations of the answer, and the contract itself. Certainly it is as consistent as an inference of release. It may be rather plausibly suggested, that if the matter is open to inference one way or the other, or open to inference at all, then the intention of the parties as disclosed by their situation ought to be disclosed, and we think that is true, but also think that it is not a question of inference, and that even with the disclosures made by the answer, there is no enforced construction of fact, of extension of time, shown. An inference of extension cannot be built upon an inference of intention, or *vice versa,* for one inference of fact cannot be built upon another inference. If the fact of intention were shown, there might be an inference of extension of time, but the fact of intention could only be shown outside the contract itself. Put in another and the strongest form that appellant could possibly urge, viz., that the court could properly charge the jury that the contract means one thing or another, depending upon extraneous circumstances to be found by them, and supposing the jury to find the extraneous circumstances as alleged, would it follow that an agreement of extension for a definite period is necessarily enforced? If not, and we think it is not, the question then gets back to the court, as one of law, for the latter's interpretation. That is, the jury's so finding would not imprint

on the agreement a valid contract of extension. In other words, the contract fixes no time, and it is claimed that it should be left to the jury not only to determine whether there was intended to be an extension of time, but also to determine what would be that time, depending upon a variety of circumstances as to how long it might take to carry out the contract, or in determining what would be a reasonable time, and if capable of being fixed at all, would be fixed by the jury, and not by the contract. A fair test would be: Would the surety under this contract, and the situation of the parties, be affected in his right to pay the debt, and be subrogated to the rights of the creditor?

Appellants' theory would open the written agreement to invoke the possible equities of the case, by inferences, or implications not deducible from the contract, or the situation of the parties, and while the question may not be absolutely free from doubt, we are of the opinion that the better reason lies in the proposition that the answer does not show a valid extension, and that the judgment should be affirmed.

NOTE.—Reported in 105 N. E. 45. As to what operates as a release of surety, see 28 Am. St. 691. As to release of surety by creditors' indulging principal, see 30 Am. Dec. 257. See, also, under (1) 35 Cyc. 47; (2) 9 Cyc. 587; (3) 32 Cyc. 196; (4) 32 Cyc. 202; (5) 32 Cyc. 203; (7) 16 Cyc. 1051.