THE PROMOTION COMPANY, INC./SPECIAL EVENTS DIVISION, Appellant,

v.

SWEENEY, Appellee.

[Cite as *The Promotion Co., Inc./Special Events Div. v. Sweeney*, 150 Ohio App.3d 471, 2002-Ohio-6711.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 02 CA 45.

Decided Dec. 6, 2002.

472

Norman Rheuban, for appellant.

Joseph Bishara, for appellee.

VUKOVICH, Presiding Judge.

{¶ 1}  Plaintiff-appellant The Promotion Company, Inc./Special Events Division appeals the decision of the Mahoning County Common Pleas Court which found in favor of Douglas Sweeney on plaintiff's complaint against him for breach of contract.  Specifically, the trial court found that Sweeney was not personally liable.  The issue before us concerns whether the failure to place "Inc." after a corporate name in a contract violates Ohio corporation law in a manner that absolutely precludes the use of the defense of agency and allows the person who signed on behalf of the company to be sued.  If this Ohio corporation law has not been violated in such a manner, then we must turn to Indiana law to determine whether the defendant's signature unambiguously reflects that it was made in a personal capacity.  The relevant portion of the contract, which was drafted by plaintiff, fails to express that defendant is signing as president and, although the name of defendant's principal is typed under the line for his signature, the word "Inc." is omitted from the principal's name.  For the following reasons, the decision of the trial court is affirmed.

## STATEMENT OF THE CASE

{¶ 2}  Douglas Sweeney was the president of State Chevrolet, Inc., an automobile dealership located on Wick Avenue in Youngstown, Ohio. The Promotion Company, Inc. is an Indiana corporation that was the promoter of the 1998, 1999, and 2000 Hot Rod Super Nationals held over a three-day period in June of each year at the Canfield Fairgrounds in Mahoning County, Ohio. In December 1997, The Promotion Company drafted a contract calling for State Chevrolet to be the presenting sponsor for each of these three years by paying $15,000 on January 15, 1998, $16,000 on January 15, 1999, and $17,000 on January 15, 2000.  The

contract states that it shall be construed and interpreted under the provisions of the laws of the state of Indiana.

{¶ 3} The contract used the name "State Chevrolet" many times throughout, never adding "Inc." to the end of the name. All clauses referring to obligations and rights named State Chevrolet as the obligor or obligee, never naming Sweeney personally. Then, preprinted under a signature line was "Douglas V. Sweeney," and preprinted below that was "State Chevrolet." It is worth noting that preprinted under the signature line for the plaintiff's signature was "C. Bruce Hubley," and preprinted below that was "Special Events Division The Promotion Co., Inc.," with nothing explicitly indicating that C. Bruce Hubley was president or was signing as president of The Promotion Company.

{¶ 4} Sweeney signed the contract on January 15, 1998, the due date of the first payment. We note here that according to a list of exhibits filed before trial, one of Sweeney's exhibits was the first check paid to The Promotion Company from the account of State Chevrolet, Inc.; it could be reasonable for a trial court to assume that this check was viewed by Hubley before he signed the contract on January 19, 1998. In any case, the 1998 event proceeded as planned. Under the terms of the contract, it would extend automatically each year unless a party notified the other of their desire to terminate the contract by August 28, 1998. Thereafter, in December 1998, Sweeney notified Hubley that the dealership was closing and that it could no longer be the presenting sponsor. The Promotion Company was not paid the fee for 1999 or 2000.

{¶ 5} On January 13, 2000, The Promotion Company filed a breach-of-contract suit against Sweeney d.b.a. State Chevrolet. Sweeney's answer defended by claiming that he executed the agreement as an agent for the disclosed principal of State Chevrolet, Inc. He thus urged that he was not personally liable and/or that plaintiff failed to join all necessary parties. On August 8, 2000, plaintiff filed a motion for summary judgment. The motion argued that there is no evidence that "State Chevrolet" exists as a corporate entity and there is no dispute that a contract was signed and breached, pointing to Sweeney's deposition. Hubley's affidavit was attached to the motion but did not speak to the intent of the parties on personal liability or knowledge of State Chevrolet's corporate identity.

{¶ 6} Sweeney responded by citing Indiana law on agent liability and arguing that the court must determine the intent of the parties where the contract is ambiguous as to its intent to hold the agent personally liable. Sweeney's response directed the court to portions of Hubley's deposition, which was filed that day. Sweeney also attached his own affidavit, which stated that State Chevrolet, Inc. was incorporated in 1944 and existed until dissolution on December 20, 1998. An exhibit from the Secretary of State's office confirmed this

period of corporate existence. The affidavit noted that Hubley prepared the contract. Sweeney also disclosed that his intent at the time of signing was to execute the agreement as president and on behalf of State Chevrolet, Inc. and not in his individual capacity. Also attached was a letter from Hubley to Sweeney sent after Sweeney advised that the dealership was going out of business; in this letter, Hubley claimed that "all liabilities and obligations of State Chevrolet are still legally binding and will have to be resolved either by State Chevrolet or the new dealership owner."

{¶ 7} On April 23, 2001, the court heard oral arguments on summary judgment, orally overruled plaintiff's motion for summary judgment, and proceeded to a bench trial. The trial court released its judgment entry on January 31, 2002, wherein it stated that summary judgment had been denied before trial, plaintiff failed to prove Sweeney's personal liability under Indiana law at trial, and Sweeney executed the agreement in his capacity as president of State Chevrolet, Inc. In ruling that there was no personal liability, the trial court characterized its order as a dismissal of plaintiff's complaint. The Promotion Company filed timely notice of appeal on March 1, 2002.

## ASSIGNMENTS OF ERROR AND ISSUE PRESENTED

{¶ 8} Appellant sets forth two assignments of error, which are addressed together under one issue presented. These assignments of error and their more specific issue presented are as follows:

{¶ 9} "The trial court erred in overruling the plaintiff-appellant's motion for summary judgment in the court's entry of January 31, 2002."

{¶ 10} "The trial court erred in dismissing plaintiff-appellant's complaint in the court's entry of January 31, 2002."

{¶ 11} "Where an individual enters into a contract without the designation of a corporation that is required by the law of the state in which he does business, may corporate status thereafter be bestowed upon him by reference to irrelevant internal provisions of the contract he signed as an individual, particularly, so as to negate his personal liability?"

{¶ 12} Appellant complains that the trial court's judgment entry failed to cite or explain the Indiana law that it used to reach its conclusion that Indiana law supports its ruling. Appellant states that the identity of parties is not susceptible to change after the fact. Appellant cites R.C. 1701.05(A), which provides that the name of a corporation shall end in certain words such as "company," "incorporated," "corporation," or the abbreviations for these words. Appellant also states that Indiana law is not relevant to the requirements for designation of an Ohio corporation. This may be true; however, appellant seemingly fails to realize that

the identity of the liable parties to a contract is a question of contract interpretation, and this contract is to be interpreted under Indiana law.

## APPELLEE'S INITIAL ARGUMENTS

{¶ 13}   Prior to addressing the crux of the issue here, we must address appellee's threshold contentions that this court cannot address appellant's arguments on appeal.   There are two related contentions in particular: (1) any error in denying summary judgment is moot after a trial on the merits and (2) appellant failed to file a transcript of proceedings from below, which is necessary to determine if the trial court properly ruled on personal liability.

{¶ 14}   First, we must point out that the contract is to be interpreted under Indiana law, but this does not mean that this court applies Indiana law to the procedural mechanisms of the court.   Thus, contrary to some cites in the briefs, when we discuss the requirements for summary judgment or for appellate transcripts, we are discussing the procedural rules that exist in Ohio, not Indiana procedure.   The Supreme Court of Ohio has held that if the evidence at trial showed a genuine issue of material fact, then any error in denying summary judgment (based on a failure to demonstrate a genuine issue for trial) is moot and reversal would not serve substantial justice.   *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 155, 642 N.E.2d 615.   This doctrine would thus preclude review of the denial of summary judgment where the nonmovant set forth the proper genuine issues at trial which it should have set forth earlier. Appellee correctly notes that because appellant failed to order a transcript, we cannot review whether the evidence at trial set forth any available genuine issues in order to make any incorrect denial of summary judgment moot.   See App.R. 9(B) (if appellant intends to argue that a ruling is unsupported by evidence or against the weight of the evidence, he must include a transcript of relevant evidence); *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384; *D'Amico v. D'Amico* (Oct. 30, 2001), 7th Dist. No. 00CA46, 2001 WL 1357052 (both holding that if the portions of the transcript necessary to review the assignments of error are not provided, then the appellate court may only assume the validity of the proceedings and affirm the judgment).

{¶ 15}   However, appellant is correct in responding that the transcript is not necessary to determine the question of law set forth in his issue presented. That is, whether the trial court was permitted to view any evidence at all besides the face of the contract to determine personal liability and/or whether the face of the contract per se establishes personal liability.   We do not need a transcript to determine this question of law because if appellant is correct, then any genuine issues of intent were irrelevant and not permitted to be determined at trial. Similarly, the *Whittington* doctrine would not preclude review because the legal

issue in this case could not be corrected or mooted at a trial. In other words, when the alleged error in the denial of summary judgment is based purely on a question of law that must be answered without regard to issues of fact, then the denial of summary judgment is reviewable. See *Lake Tomahawk Prop. Owners Assn. v. Smith* (Dec. 28, 2001), 7th Dist. No. 00CO37, 2001 WL 1700431. See, also, *Ahern v. Ameritech* (2000), 137 Ohio App.3d 754, 769, 739 N.E.2d 1184 (8th Dist.); *Wein v. Seaman Corp.* (1996), 116 Ohio App.3d 189, 194, 687 N.E.2d 477 (9th Dist.).

{¶ 16} In conclusion, appellant argues that as a matter of law, from the four corners of the document itself, Sweeney is personally liable. If appellant is legally correct, then the case must be reversed and remanded. If appellant is legally incorrect (and the trial court was permitted to review parol or extrinsic evidence to determine the parties knowledge and intent), then our analysis would end with an affirmance at that point, and we would not review the court's weighing of the evidence on intent due to the lack of transcript.

## LAW AND ANALYSIS

{¶ 17} As noted, Indiana law was contractually designated as the law to be applied when interpreting the contract in this case. Nonetheless, as appellant urges, whether or not an *Ohio* corporation existed would be a matter of Ohio law rather than Indiana law. As aforementioned, appellant points to R.C. 1705.01(A), which states that the corporate name of a domestic corporation shall end with or include the word or abbreviation "company," "co.," "corporation," "corp.," "incorporated," or "inc." See, also, Indiana Code 23–1–23–1(a)(1) (which contains this same provision). Appellant also cites R.C. 1329.10(C), which allows an action to be commenced against the user of a fictitious name regardless of whether the name has been registered under R.C. 1329.01(A)(2) or (D).

{¶ 18} Appellant's arguments remain totally focused on the lack of the word "Inc." from the end of State Chevrolet in the contract. However, such an omission in a contract drafted by the complaining party does not per se place liability on Sweeney. Although the contract *drafted by appellant* may not have used one of the statutory words in the name of the company for which appellee was the president, the true name of the company *does* contain these words. According to documentation provided in response to appellant's motion for summary judgment, State Chevrolet, Inc. was a corporation that existed in Ohio at the time the contract was entered, and Sweeney was its president and statutory agent. Sweeney stated this in his answer and supported this statement with evidence in his response to summary judgment. Thus, corporate nonexistence could not have been declared as a matter of law by the trial court prior to

trial based merely on the fact that the contract omitted the word "Inc." from the company's name.

{¶ 19}  To support these conclusions, we refer to the statutes dealing with corporate formation.  A domestic corporation for profit exists if it is "formed" under the laws of this state.  R.C. 1701.01(A).  A corporation is formed by signing and filing articles of incorporation with the Secretary of State.  R.C. 1701.04(A).  These articles must include the name of the corporation as R.C. 1701.05 specifies.  R.C. 1701.04(A)(1).  Pursuant to R.C. 1701.05(A), the corporate name shall include one of the corporate indicators listed above.  Once the articles are filed, the corporation legally exists perpetually.  R.C. 1701.04(E).

{¶ 20}  The corporate name indicators that must be a part of the corporate name in the articles of incorporation submitted to the Secretary of State are mandatory in order to initially form a corporation.  The omission of a corporate name indicator in subsequent business dealings does not extinguish the existence of a corporation and place personal liability on the representative who signs a contract for the company.  See, e.g., *United States v. Kessler* (S.D.Ohio 1972), 338 F.Supp. 420 (citing the law within R.C. 1701.04(A) and (E) and holding that once an Ohio corporation is properly formed, corporate existence is not extinguished by a failure to comply with a law such as the securities provisions contained in R.C. Chapter 1707).

{¶ 21}  If this were so, then the trade name and fictitious name statutes would not exist.  Under R.C. 1329.10(C), an action may be brought against *the user* of a trade name or fictitious name whether or not the name has been registered or reported in compliance with R.C. 1329.01.  Appellant disregards the fact that the user of the fictitious name can be a corporation; "person" in the fictitious name statute includes a corporation in its definition.  R.C. 1329.01.  See, also, Ind.Code 23–15–1–1.  Nothing requires a corporation's fictitious name to contain a corporate name indicator.  Appellant does not specify why it believes that Sweeney is the user of the fictitious name rather than State Chevrolet, Inc.  Moreover, it has been held that there is no private right of action for a violation of R.C. 1329.01.  *Abele v. Bayliner Marine Corp.* (N.D.Ohio 1997), 11 F.Supp.2d 955 (where the plaintiff complained that the defendant failed to register its trade name with the Ohio Secretary of State).

{¶ 22}  This leads us to a review of the general principles of contract interpretation and agency law.  We shall outline the view of the American Law Institute's relevant Restatement volume, the provisions in the Uniform Commercial Code, which are often viewed as persuasive authority in simple contract construction, and case law that includes statutory interpretations.

{¶ 23} According to the Restatement of the Law 2d, Agency (1958), Section 322, where there is an undisclosed principal (i.e., no evidence of agency and no mention of principal), the agent is liable. The agent is also liable where the principal is known by both parties to be nonexistent such as in the case of promoters of a corporation signing contracts for a corporation that has not yet been formed. Id. at Section 326, adopted by *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 522, 524, 639 N.E.2d 771. However, an authorized agent with power to bind a disclosed or partially disclosed principal does not become liable for nonperformance of a contract made only on behalf of that principal. Id. at Section 328. See *Winkler v. V.G. Reed & Sons, Inc.* (Ind.1994), 638 N.E.2d 1228, 1231 (noting that the agent is not liable where the existence of agency and the identity of the principal are disclosed); *Clark Advertising Agency, Inc. v. Avco Broadcasting Corp.* (1978), 178 Ind.App. 451, 455, 383 N.E.2d 353, citing Restatement of the Law, 2d, Agency, Section 328.

{¶ 24} Pursuant to Section 327 of this Restatement, the rules on contract interpretation are applicable in an action against an agent. If it appears unambiguously that the agent is a party or is not a party, then extrinsic evidence is not admissible to show contrary intent except to reform the contract. Id. at Section 323(1). An example of unambiguous expression of agency, or the lack thereof, is where the agent signs with words such as "acting for myself alone." Id. at Section I 323, Illustration 1. If the fact of agency appears and there is not an unambiguous expression of an intention either to make the agency a party or not to make him a party, then extrinsic evidence can be introduced to show intent. Id. at Section 323(2). The statement as to the parties may appear either in the body of the instrument or in the signature; *an ambiguity may exist due to a contradictory, defective, or partial expression in either.* Id. at Section 323, Comment *a.*

{¶ 25} Here, we have a dispute between the original parties. We do not have a representative capacity expressly spelled out, but we do have a business name under the individual's name and a business name used throughout the agreement. This business is the "final end user" of all services and is obligated to make payments. See *Edcom Prod., Inc. v. Wattenmaker Advertising, Inc.* (Dec. 23, 1982), 8th Dist. No. 44829, 1982 WL 2648. As for naming the represented person, appellant seems to argue that without the word "Inc.," the principal was not actually disclosed. However, a principal was disclosed; the omission of "Inc." by the plaintiff-drafter of the contract did not make the principal undisclosed or partially disclosed under the terms of the above Restatement sections. We move to an analysis of other law. See Restatement of the Law 3d, Agency (2001), Tentative Draft No. 2, Chapter 2, Topic 4 (noting that agency law does not operate in isolation from other doctrines).

{¶ 26}  A relevant statute in both Ohio and Indiana which is derived from Uniform Commercial Code 3–402 implies a similar result.  Ind.Code 26–1–3.1–402; R.C. 1303.42.  Although the U.C.C. deals with commercial paper and negotiable instruments, the rules on liability of a representative contained in the U.C.C. have been used by courts as persuasive authority in dealing with regular or simple contractual dealings.  Under the present version of U.C.C. 3–402, the following rules govern:  if the form of the signature unambiguously shows that the signature is made in a representative capacity and the represented person is identified, then the representative is not liable on the instrument; if the form of the signature does not unambiguously show that the signature is made in a representative capacity or if the represented person is not identified, the representative is liable to a holder in due course without notice but as to other persons, the representative will not be liable if he can prove that the original parties did not intend for him to be personally liable.  Ind.Code 26–1–3.1–402(b)(1), (2); R.C. 1303.42(B)(1), (2).

{¶ 27}  This new (1993/1994) signature-interpretation law acts to further insulate the representative.  The Official Comment to U.C.C. 3–402 notes how the former version (U.C.C. 3–403) caused courts to refuse to allow an agent to attempt to prove intent where he signed his name but did not mention his principal.  The comment then states that U.C.C. 3–402(b)(2) changes this result.  The comment also notes, "Former Section 3–403 spoke of the represented person being 'named' in the instrument.  Section 3–402 speaks of the represented person being 'identified' in the instrument.  This change in terminology is intended to reject decisions under former Section 3–403(2) requiring that the instrument state the *legal name* of the represented person."  (Emphasis added.)  Thus, not only does this section establish that failure to use the exact legal name of the represented person is not fatal to the agent, it also establishes that extrinsic evidence on intent is admissible in a dispute between the original parties in a situation such as the one before us.  Besides setting forth some general agency principles and reviewing the U.C.C. signature of representative section, we have collected other authority on the subject.

{¶ 28}  Recently, an Indiana appellate court ruled on a case similar to the one before us.  *Evans v. Med. & Professional Collection Serv., Inc.* (Ind.App.2001), 741 N.E.2d 795.  A cable company contracted to provide cable advertising for a car dealership owned by Evans.  Evans signed the agreement, and for a title he "wrote what appears to be" the word "President."  Id. at 797.  The obligations within the contract referred only to the dealership as being liable.  The dealership was referred to merely as "Evans Ford" in the contract, even though its proper name was "Evans Lincoln Mercury Ford, Inc."

{¶ 29} The cable company assigned its rights to a collection service, which filed suit against Evans personally. The trial court found Evans personally liable. However, the appellate court reversed. The court noted that the issue was one of contract interpretation. Id. at 797. Thus, the court's goal was to determine the intent of the parties at the time of execution as revealed by the language in the agreement. As in all contract cases, interpretation is a matter of law where the terms are unambiguous. Id. However, when the meaning cannot be gleaned from the four corners of the agreement, the parties' intent becomes a question of fact upon resort to extrinsic evidence. Id. at 797–798. See, also, *Alexander v. Capitol Lumber Co.* (1914), 181 Ind. 527, 532–533, 105 N.E. 45 (setting forth these well-established rules for contract interpretation).

{¶ 30} The appellate court noted that whether the contract was ambiguous or not is determined by asking whether a reasonable person would find the agreement subject to more than one interpretation. *Evans*, 741 N.E.2d at 798. In finding no personal liability, the court first opined that the contract unambiguously states that it is between the cable company and "Evans Ford." Id. The court pointed out that the cable company was the drafter of the contract, and it chose to list the business, not Evans, as the party with whom it had contracted. Id. The court also explained that the business address was listed in the agreement, not Evans personal residential address. Id. Finally, it stated that he signed the agreement in his representative capacity rather than his personal capacity. Id. The lack of the word "Inc." did not extinguish the ability to claim corporate status. Id. See, also, *Parker v. Rod Johnson Farm Serv., Inc.* (1979), 179 Ind.App. 190, 384 N.E.2d 1129 (holding that a corporation is not prevented from recovering on a contract merely because the contract that the corporation executed failed to contain the word "Inc." when setting forth the corporate name).

{¶ 31} Similarly, we have a defendant who was not the drafter of the contract. We have a car dealership that is referred to in the contract as its common fictitious name rather than its proper legal name which includes "Inc." We have a contract that, on the very first line, explicitly states that the contract is between The Promotion Company, Inc. and State Chevrolet, rather than between plaintiff and Sweeney. We can infer no desire to hide the existence of a corporation. See *Oil Supply Co. v. Hires Parts Serv.* (Ind.2000), 726 N.E.2d 246, 249. As aforementioned, in explanation of every obligation and right, the contract refers to State Chevrolet, not Sweeney. We also have the business address listed in the contract rather than Sweeney's residential address. Finally, although we do not have the word "President" next to Sweeney's name, we do have the business name typed directly below his signature. Moreover, on this issue, we have the drafter of the contract himself signing above the name of his corporation without labeling himself as the president either. Thus, we have, at

the very least, a genuine issue of material fact on the intent of the parties on the issue of personal liability, allowing the case to go to trial for the fact-finder to resolve the issue through the use of parol evidence. Nevertheless, we will further bolster our position with the following Indiana Supreme Court law.

{¶ 32} In *Price v. Aronson*, the plaintiff attempted to place personal liability on the defendant who was a shareholder, officer, and director of a body shop. (Ind.App.1994), 629 N.E.2d 268. The trial court entered judgment for the plaintiff because (1) the sign on the front of defendant's shop, its business cards, and its receipts did not indicate that the shop was incorporated, citing Indiana Code 23–1–23–1(a); (2) no one informed the plaintiff he was dealing with a corporation; and (3) a certificate for an assumed business name (i.e. fictitious name) was not filed with the state until after the incident, citing Indiana Code 23–15–1–1.

{¶ 33} The appellate court noted that it could find no Indiana law addressing whether failure to comply with Indiana Code 23–1–23–1(a) in everyday business dealings with the public justifies imposing personal liability on the director of the corporation. *Price*, 629 N.E.2d at 270. The appellate court then cited cases from other states, noting that the statute does not mandate that corporate names appear on signs, letterheads, forms, and phone listings. Id. The court explained that the point of the statute is to have distinguishable corporate names and to establish administrative procedures for indicating corporate status in the secretary of state's records. Id. See, also, *Ohio Natl. Life Ins. Co. v. Ohio Life Ins. Co.* (1965), 3 Ohio St.2d 44, 32 O.O.2d 24, 209 N.E.2d 157, syllabus (explaining that the purpose of the corporate-name statute is to eliminate unfair competition that occurs through use of a name indistinguishable from that of an established company name in order to mislead the public). On the fictitious-name issue, the appellate court stated that failing to report a fictitious name does not justify imposing liability on an individual director. Id. at 270–271. Finally, the appellate court determined that the director did not use the corporate form as a mere subterfuge merely because he stated that he was the owner. Id. at 271.

{¶ 34} The Indiana Supreme Court affirmed the judgment of the Indiana appellate court in *Aronson v. Price* (Ind.1994), 644 N.E.2d 864. The Supreme Court agreed with all of the appellate court's holdings. Even the dissent did not state that the defendant was per se liable but rather stated that the liability decision was for the trial court to make based on the totality of the circumstances. Id. at 869–870 (Dickson, J., dissenting).

{¶ 35} In construing all of the above law, we find that the trial court did not err in failing to grant summary judgment and in proceeding to trial on the

genuine issues of fact surrounding any ambiguities in the contract regarding liability.[1]

{¶ 36} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

GENE DONOFRIO and WAITE, JJ., concur.

---

1. As for counsel's suggestion that he would have violated Civ.R. 11 by filing suit against a corporation that he could not tell existed from the face of the contract, even if this allegation were true, such a suit could have been filed (joined in the alternative) when counsel was apprised of the existence of such a corporation.