Packaging Materials Supply Company, Inc. ("PMSC"), appeals from a summary judgment entered by the Jefferson Circuit Court on its claims against Jerry Prater, an individual allegedly doing business under the name "ComfortPlus." We affirm.
In March 2002, PMSC sued Prater in the Jefferson District Court alleging that Prater was liable to PMSC on theories of account stated, open account, and breach of contract. After the district court entered a judgment in favor of PMSC, Prater timely appealed to the Jefferson Circuit Court for a trial de novo. Prater then filed a motion for a summary judgment, supported by a narrative summary of facts, his affidavit, and various exhibits. Prater contended in his motion that he could not legally be held liable to PMSC because, he alleged, he had acted in a representative capacity for a corporation called "ComfortPlus, Inc." in all of his dealings with PMSC. After PMSC had filed a response in opposition (supported by an affidavit of its president) and the parties had been afforded a hearing on the motion, the circuit court entered a summary judgment in favor of Prater. The circuit court subsequently denied PMSC's postjudgment motion, and PMSC appealed to this court.
 "Under Rule 56(c)(3), Ala. R. Civ. P., a trial court is authorized to enter a summary judgment when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Because the pertinent facts in [this case] are undisputed, we review the trial court's application of law to those facts to determine whether the defendant was entitled to a judgment as a matter of law. See Carpenter v. Davis, 688 So.2d 256, 258
(Ala. 1997). We review the trial court's judgment under a de novo standard. See Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025
(Ala.Civ.App. 1993)."
Menendez v. COLSA, Inc., 852 So.2d 768, 770 (Ala.Civ.App. 2002).
The pertinent facts in this appeal are undisputed. In January 1999, Prater executed and recorded articles of incorporation with respect to a business entity known as "ComfortPlus, Inc." Prater acted as the president of ComfortPlus, Inc., and owned all of the stock of that company, which manufactured and distributed medical supplies until its dissolution in February 2002. Because ComfortPlus, Inc., needed packing materials to ship goods, it regularly purchased such materials on credit from PMSC, which maintained an account under the name "Comfort Plus." ComfortPlus, Inc., customarily settled its account by issuing checks drawn on banking institutions at which it maintained accounts, such as SouthTrust Bank and AmSouth Bank; these checks were signed by Prater as the authorized agent of ComfortPlus, Inc. The record reveals that between May 1999 and September 2001, over 40 checks made payable to the order of PMSC were drawn on a SouthTrust Bank account maintained in the name of ComfortPlus, Inc. Each of those checks bore the signature "Jerry Prater" and identified the issuer as "COMFORTPLUS, INC."; the corporation's business address was also disclosed on the face of each of those checks.
In December 2001, a check payable to PMSC in the amount of $8,500 was drawn *Page 863 
on an account at AmSouth Bank. A copy of that check appearing in the record shows the holder of the account to be "COMFORT PLUS," and the address disclosed for the account holder is substantially the same address as that which appeared on the face of the SouthTrust Bank checks; the signature appearing on that check is "Jerry Prater." However, that check, which forms the basis of PMSC's action, was subsequently dishonored by AmSouth Bank because there were insufficient funds to cover the check at the time it was presented for payment.
PMSC claims that because the AmSouth Bank check bore the name "COMFORT PLUS," rather than the full legal name of the corporation for which Prater was acting (ComfortPlus, Inc.), and because Prater did not expressly note on the face of the check that he was signing the check in his representative capacity, he is personally liable to PMSC because the check was dishonored. However, PMSC acknowledges that in 1995 Article 3 of Alabama's Uniform Commercial Code was amended so as to remove any requirement that one signing a check as an authorized representative of another identified person must indicate that representative capacity:
 "If a representative signs the name of the representative as drawer of a check without indication of the representative status and the check is payable from an account of the represented person who is identified on the check, the signer is not liable on the check if the signature is an authorized signature of the represented person."
Ala. Code 1975, § 7-3-402(c). The Official Comment to § 7-3-402
states:
 "Subsection (c) is directed at the check cases. It states that if the check identifies the represented person the agent who signs on the signature line does not have to indicate agency status. Virtually all checks used today are in personalized form which identify the person on whose account the check is drawn. In this case, nobody is deceived into thinking that the person signing the check is meant to be liable. This subsection is meant to overrule cases decided under former Article 3 such as Griffin v. Ellinger, 538 S.W.2d 97 (Texas 1976)."
Thus, under § 7-3-402 as amended in 1995, where an agent signs a check that "identifies" a particular principal as the holder of the account on which the check is drawn, the agent is not subject to personal liability on the check. While no Alabama case has previously considered this issue, our conclusion mirrors that of other state appellate decisions applying the revised version of Article 3 of the Uniform Commercial Code. Peterson v.Holtrachem, Inc., 239 Ga.App. 838, 521 S.E.2d 648 (1999);Medina v. Wyche, 796 So.2d 622 (Fla.Dist.Ct.App. 2001); Raid,Inc. v. Andrew (No. CV000178828S, Feb. 8, 2002), 47 U.C.C. Rep. Serv.2d 633 (Conn.Super. 2002) (not reported in A.2d).
Citing Ala. Code 1975, § 10-2B-4.01(a)(1), a portion of the Alabama Business Corporation Act, which requires corporations to include either the word "corporation" or "incorporated" in their names, PMSC argues that "ComfortPlus, Inc." was not "identified" on the AmSouth Bank check because the face of that check bore the name "COMFORT PLUS." However, we do not believe the omission of the corporate identifier "Inc." from the face of the AmSouth Bank check signed by Prater (or, for that matter, the addition of a space between the words "Comfort" and "Plus") is legally significant. The Official Comment to § 7-3-402 states that although the pre-1995 version of Article 3 the Alabama Uniform Commercial Code "spoke of the represented person being `named' in the instrument," the revised article "speaks of *Page 864 
the represented person being `identified' in the instrument" (emphasis added); that revision constitutes a "change in terminology" that "is intended to reject decisions . . . requiring that the instrument state the legal name of the represented person." As the Ohio Court of Appeals noted in ThePromotion Co., Inc./Special Events Division v. Sweeney,150 Ohio App.3d 471, 782 N.E.2d 117 (2002), the most recent revision of § 3-402 of the Uniform Commercial Code (from which Ala. Code 1975, §7-3-402 is derived) "establish[es] that failure to use the exact legal name of the represented person is not fatal to the agent."150 Ohio App.3d at 480, 782 N.E.2d at 124; cf. Peterson,239 Ga.App. at 838, 521 S.E.2d at 648 (noting that agent had signed check drawn on account of "CS Industries," a trade name for a business entity known as "Textiles Specialties Chemicals"). Under the facts of this case, ComfortPlus, Inc., was "identified" as the issuer of the AmSouth Bank check so as to render it liable to PMSC for that check's dishonor.
Based upon the foregoing facts and authorities, we conclude that the trial court correctly entered its summary judgment in favor of Prater.
AFFIRMED.
YATES, P.J., and CRAWLEY, THOMPSON, and MURDOCK, JJ., concur.